**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Walker v. Husted,* **Slip Opinion No. 2015-Ohio-3749.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-3749

THE STATE EX REL. WALKER ET AL. *v*. HUSTED.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Walker v. Husted,* Slip Opinion No. 2015-Ohio-3749.]

*Elections—Mandamus—Initiative—Proposed county charter—Protests against petitions sustained—Scope of secretary of state's authority under R.C. 307.95(C)—Secretary of state did not abuse discretion by invalidating petitions on basis that proposed charters did not set forth form of government as required by Article X, Section 3, Ohio Constitution—Writ of mandamus compelling placement of proposed charters on ballot denied.*

(No. 2015-1371—Submitted September 10, 2015—Decided September 16, 2015.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} Electors in Medina, Fulton, and Athens counties circulated and filed petitions to adopt charters in their respective counties.  The proposals were

intended for placement on the ballots for the November 3, 2015 general election. Ohio Secretary of State Jon Husted sustained protests against the three petitions. The relators[1] seek a writ of mandamus to compel Husted to reverse his decision and compel placement of the charter measures on the November ballots. We deny the writs.

*Background*

{¶ 2} On June 24, 2015, a petition for the submission of a proposed county charter was submitted to the Fulton County Board of Elections. Substantially similar charter petitions were circulated and submitted in Athens and Medina counties. Copies of the three charter petitions are attached as exhibits to relators' complaint.

{¶ 3} After the respective boards of elections certified the petitions to the secretary of state's office, protests were filed against all three measures. On August 13, 2015, Husted upheld the three protests, invalidated the petitions, and ordered that the charter proposals shall not appear on the ballot.

*Procedural history*

{¶ 4} Relators commenced this expedited election case on August 19, 2015. We granted leave to intervene to Joanne Dove Prisley and Mark Overholt, protesters from Athens and Medina counties, and they timely filed merit briefs. We also permitted the Fulton County protesters, Charles Saunders, R.J. Lumbrezer, and Roy Norman, to intervene, but they did not file briefs.

{¶ 5} The court received four amicus briefs in support of Husted, from (1) the Ohio Oil and Gas Association and Ohio Gas Association, (2) the Ohio Farm Bureau Federation, Athens-Meigs Farm Bureau, Fulton County Farm Bureau, and Medina County Farm Bureau, (3) the Ohio Chamber of Commerce, Affiliated

---

[1] The relators are Renee Walker, John P. Ragan, Elizabeth Athaide-Victor, Katharine S. Jones, Lynn Kemp, Douglas S. Arbuckle, Austin Babrow, John Howell, Richard McGinn, and Sally Jo Wiley.

Construction Trades of Ohio, and the American Petroleum Institute, and (4) the County Commissioners Association of Ohio.

{¶ 6} Relators filed a reply brief on September 8, 2015. The matter is now fully briefed and ripe for resolution.

*Summary of the issues*

{¶ 7} In his letter sustaining the protests, Husted offered two reasons for invalidating the petitions. First, he asserted that the petitions fail to create an "alternative form of government" as required by R.C. 302.02 because they do not provide for the election or appointment of a county executive or, in fact, for any meaningful change in the structure of county government. Second, he claimed that the substantive prohibition on high-volume hydraulic fracturing ("fracking") in the proposed charters conflicts with the state's exclusive authority to regulate oil and gas operations in Ohio.

{¶ 8} Relators dispute both of Husted's conclusions on the merits. But more fundamentally, they assert that Husted exceeded his authority by making a final decision on the substantive legality of the proposed charters. The case therefore requires us to determine the scope of Husted's reviewing authority under R.C. 307.95(C).

*The scope of the secretary's authority*

{¶ 9} When a protest is made against a petition proposing the adoption of a county charter, the board of elections must deliver a copy of the protest to the secretary of state, who, within ten days, "shall determine the validity or invalidity of the petition and the sufficiency or insufficiency of the signatures." R.C. 307.95(C). Husted argues that this language confers upon him discretionary authority to determine all aspects of the petition's "validity," without limitation.

{¶ 10} We begin our analysis with an examination of comparable language elsewhere in the Revised Code. R.C. 731.28 requires city auditors and village clerks to "certif[y] the sufficiency and validity" of initiative petitions.

Those municipal officials have limited discretionary authority concerning matters of form, but not matters of substance. *State ex rel. N. Main St. Coalition v. Webb*, 106 Ohio St.3d 437, 2005-Ohio-5009, 835 N.E.2d 1222, ¶ 30. A village clerk may only determine the sufficiency and validity of a petition based on what is evident on the face of the petition. *State ex rel. Lange v. King*, ___ Ohio St.3d ___, 2015-Ohio-3440, ___ N.E.3d ___, ¶ 11.

{¶ 11} The same language appears in R.C. 3501.11(K), which confers statutory authority upon county boards of elections to review, examine, and certify "the sufficiency and validity of petitions." R.C. 3501.11(K). But we have held that a board of elections has greater discretion to inquire into the sufficiency of a proposed ballot measure than municipal officials do. *State ex rel. N. Main St. Coalition* at ¶ 30. Unlike municipal officials, the boards of elections have statutory authority to conduct quasi-judicial protest hearings. R.C. 3501.39(A)(2); *State ex rel. Ebersole v. Delaware Cty. Bd. of Elections*, 140 Ohio St.3d 487, 2014-Ohio-4077, 20 N.E.3d 678, ¶ 48.

{¶ 12} The secretary's statutory authority to inquire into a charter petition's "validity" is at least as broad as that of the boards of elections, a point underscored by the fact that R.C. 307.95(C) expressly permits the secretary to "conduct hearings." But we have never held that the authority of the secretary or of the boards is without limits.

{¶ 13} Election officials serve as gatekeepers, to ensure that only those measures that actually constitute initiatives or referenda are placed on the ballot. For example, the right of referendum does not exist with respect to a measure approved by a city council acting in an administrative, rather than legislative, capacity. *Buckeye Community Hope Found. v. Cuyahoga Falls*, 82 Ohio St.3d 539, 697 N.E.2d 181 (1998), paragraph two of the syllabus. Because a referendum on an administrative matter is a legal nullity, boards of elections have not only discretion, but an affirmative duty, to keep such items off the ballot.

4

*Ebersole* at ¶ 30. It necessarily follows that the boards have discretion to determine which actions are administrative and which are legislative.

{¶ 14} Likewise, a board of elections has discretion to determine whether a ballot measure satisfies statutory prerequisites to be a ballot measure. *State ex rel. Choices for South-Western City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 39, 50-55 (board of elections did not abuse its discretion in determining that levy-repeal petition was unauthorized by statute, which authorized ballot measures only for certain levy decreases).

{¶ 15} But this authority to determine whether a ballot measure falls within the scope of the constitutional power of referendum (or initiative) does *not* permit election officials to sit as arbiters of the legality or constitutionality of a ballot measure's substantive terms. We agree with the holding in *State ex rel. Schultz v. Cuyahoga Cty. Bd. of Elections*, 50 Ohio App.2d 1, 361 N.E.2d 477 (8th Dist.1976), that R.C. 3501.11 vests the board of elections with authority to go beyond the face of the petition in determining validity, *id.* at 5, and that "[t]he substantive limitation is only that the board of elections has no power to determine that an issue should not be placed on the ballot because if passed it would be unconstitutional or otherwise illegal." *Id*. at 5-6.

{¶ 16} An unconstitutional proposal may still be a proper item for referendum or initiative. If passed, the measure becomes void and unenforceable only when declared unconstitutional by a court of competent jurisdiction. Until then, the people's power of referendum remains paramount. This conclusion is consistent with our rule that we "will not consider, in an action to strike an issue from the ballot, a claim that the proposed amendment would be unconstitutional if approved, such claim being premature." *State ex rel. Cramer v. Brown*, 7 Ohio St.3d 5, 6, 454 N.E.2d 1321 (1983).

{¶ 17} Husted urges us to defer to his broader interpretation of R.C. 307.95(C), which would effectively give him discretion to prejudge the legality or

constitutionality of the substance of a petition. We decline to do so because his interpretation is not reasonable. *State ex rel. Myles v. Brunner*, 120 Ohio St.3d 328, 2008-Ohio-5097, 899 N.E.2d 120, ¶ 26 (court need not defer to secretary of state's unreasonable interpretation of election law). Husted's construction of the statute would lead to absurd results.

{¶ 18} Husted's interpretation of R.C. 307.95(C) would permit him to disqualify ballot initiatives before they are submitted to the electorate based on his legal opinion of their constitutionality. Challenges to his decisions would then come before this court in mandamus, and the question would be whether the secretary abused his discretion. As is well established, abuse of discretion means more than an error of law or of judgment. *Sivit v. Village Green of Beechwood, L.P.*, 143 Ohio St.3d 168, 2015-Ohio-1193, 35 N.E.2d 508, ¶ 9. Rather, it "implies an attitude * * * that is unreasonable, arbitrary, or unconscionable." *Ojalvo v. Ohio State Univ. Bd. of Trustees,* 12 Ohio St.3d 230, 232, 466 N.E.2d 875 (1984). In close cases, therefore, we might very well be compelled to find that the secretary reasonably disqualified a ballot measure, in the exercise of his discretion, even if we, in the exercise of our constitutional duties, would deem the measure constitutional. In that scenario, the voters would be denied the opportunity to vote on a *constitutional* ballot measure, and decisions of constitutional interpretation would be made by the chief elections official, rather than the supreme court of the state. This cannot be the result the General Assembly intended when it enacted R.C. 307.95(C).

*Legal analysis*

{¶ 19} With these foundational principles set forth, this case is easily resolved. First, Husted rejected the petitions on the ground that the charters unconstitutionally interfered with the state's exclusive authority to regulate oil and gas operations. The three charter provisions effectively ban high-volume hydraulic fracking as a method of oil and gas extraction. In addition, two of the

charters prohibit (with some exceptions) new gas or oil exploration or extraction and new extraction methods.

**{¶ 20}** According to Husted, these terms are void and unconstitutional in light of our recent decision in *State ex rel. Morrison v. Beck Energy Corp.,* ___ Ohio St.3d ___, 2015-Ohio-485, ___ N.E.3d ___, in which we invalidated local ordinances regulating oil and gas extraction as in conflict with the state's sole and exclusive regulatory authority.

**{¶ 21}** We hold that R.C. 307.95(C) confers no authority upon the secretary of state to invalidate charter petitions based upon his assessment of the legality or constitutionality of the measure, if enacted.

**{¶ 22}** However, Husted presented an alternative basis for invalidating the charter petitions, namely, that the charters do not satisfy the threshold requirements that define a charter initiative. Specifically, Article X, Section 3 of the Ohio Constitution requires that every county charter "shall provide the form of government of the county and shall determine which of its officers shall be elected and the manner of their election." And R.C. 302.02 mandates that an alternative form of county government "shall include either an elective county executive * * * or an appointive county executive."

**{¶ 23}** Article IV of the proposed charters, entitled "Form of Government and Elections," contains Section 4.01, "County Officers, Duties, Powers, and Manner of Election." It states:

> The offices and duties of those offices, as well as the manner of election to and removal from County offices, and every other aspect of county government not prescribed by this Charter, or by amendments to it, shall be continued without interruption or change in accord with the Ohio Constitution and the laws of Ohio

that are in force at the time of the adoption of this Charter and as they may subsequently be modified or amended.

While purporting to maintain the status quo on matters of county offices, officers, and their duties and manner of election, these proposed charters do not "provide the form of government of the county" or "determine which of its officers shall be elected and the manner of their election." One must look to sources outside the proposed charters to determine the form of government they purport to establish, and therefore they do not satisfy the legal prerequisites.

{¶ 24} We hold that it was within Husted's discretion to determine that the proposed charters were invalid because they did not set forth the form of government, which is the sine qua non of a valid charter initiative, and to invalidate the three petitions on that basis.

{¶ 25} Finally, we note that once again, the relators in an expedited election case have failed to submit affidavits that comply with S.Ct.Prac.R. 12.02(B)(2). Affidavits in original actions must be made on personal knowledge. The ten verification affidavits in this case are all made "to the best of my knowledge, information, and belief." Such affidavits are insufficient. *State ex rel. Esarco v. Youngstown City Council*, 116 Ohio St.3d 131, 2007-Ohio-5699, 876 N.E.2d 953, ¶ 15-16. This defect serves as an alternate basis for our decision.

Writ denied.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

PFEIFER, J., concurs in judgment only.

O'NEILL, J., dissents.

_____

James Kinsman and Terry J. Lodge, for relators.

Michael DeWine, Attorney General; Bricker & Eckler, L.L.P., Kurtis A. Tunnell, and Anne Marie Sferra, for respondent.

Michael M. Hollingsworth, for intervening respondent Joanne Dove Prisley.

The Law Firm of Curt C. Hartman and Curt C. Hartman, for intervening respondent Mark Overholt.

Vorys, Sater, Seymour & Pease, L.L.P., Lisa Babish Forbes, Aaron M. Williams, and John K. Keller, urging denial of the writ for amici curiae Ohio Oil and Gas Association and Ohio Gas Association.

Porter, Wright, Morris & Arthur, L.L.P., L. Bradfield Hughes, Kathleen M. Trafford, and Kevin J. Kelley, urging denial of the writ for amici curiae Ohio Chamber of Commerce, Affiliated Construction Trades of Ohio, and American Petroleum Institute.

Chad A. Endsley, Leah F. Curtis, and Amy M. Milam, urging denial of the writ for amici curiae Ohio Farm Bureau Federation, Athens-Meigs Farm Bureau, Fulton County Farm Bureau, and Medina County Farm Bureau.

Peck, Shaffer & Williams, Thomas A. Luebbers, and Michael T. Dean, urging denial of the writ for amicus curiae County Commissioners Association of Ohio.

_____