[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Coover v. Husted,* Slip Opinion No. 2016-Ohio-5794.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-5794

THE STATE EX REL. COOVER ET AL. *v.* HUSTED ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Coover v. Husted,* Slip Opinion No. 2016-Ohio-5794.]

*Elections—Mandamus—County-charter petitions—Secretary of state and boards of elections did not violate relators' constitutional rights by examining proposed county charters to determine whether they satisfied threshold requirements of Article X, Section 3 of Ohio Constitution for inclusion on ballot—Secretary and boards did not abuse discretion in determining that proposed charters did not satisfy threshold requirements of Article X, Section 3—Writ denied.*

(No. 2016-1247—Submitted September 7, 2016—Decided September 13, 2016.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} This is an expedited election case in which relators seek a writ of mandamus requiring respondents, Secretary of State Jon Husted and the boards of elections of Athens, Meigs, and Portage Counties ("the boards of elections"),[1] to place proposed charters for those counties on the ballot at the November 8, 2016 general election. We hold that relators are not entitled to the writ.

*Factual and procedural history*

{¶ 2} Relators are members of the committees that filed petitions under Article X, Section 3 of the Ohio Constitution and R.C. 307.94 proposing the adoption of county charters in Athens, Meigs, and Portage Counties.[2]

{¶ 3} Each of the boards of elections reviewed the petition filed in its county to determine its validity and whether it contained sufficient signatures. Though determining that the petitions contained sufficient signatures, the boards unanimously rejected the petitions as invalid. Relators filed a timely protest of each of these decisions pursuant to R.C. 307.95(B). On August 15, 2016, Secretary Husted issued a single decision denying all three protests and instructing the boards not to place the proposed charters on the ballot.

{¶ 4} On August 19, 2016, relators initiated this action as an expedited election matter pursuant to S.Ct.Prac.R. 12.08. They seek a writ of mandamus requiring Secretary Husted and the boards of elections to place the proposed charters on the ballot.

---

[1] The Athens County Board of Elections includes Helen Walker, Kate McGuckin, Ken Ryan, and Aundrea Carpenter-Colvin. The Meigs County Board of Elections includes Charles E. Williams, David W. Fox, Rita Slavin, and James V. Stewart. The Portage County Board of Elections includes Craig M. Stephens, Patricia Nelson, Andrew Manning, and Doria Daniels.

[2] Virginia L. Coover, John Howell, Richard McGinn, Michael H. Rowe, and Sally Jo Wiley are members of the committee that filed the Athens County petition. Dennis J. Sargent, Kathy Lynn Sargent, Gregory D. Howard, and Marsha Nagy Whitton are members of the committee that filed the Meigs County petition. Kathleen M. Schumann, Gwen B. Fischer, Bradford Brotje, JoEllen Armstrong, and Sandra Engle are members of the committee that filed the Portage County petition.

### *Summary of the issues*

**{¶ 5}** The Athens County Board of Elections rejected the Athens County committee's petition because it failed to alter the form of government, failed to vest powers from the municipalities and townships with the county, and relied on the Revised Code to determine the qualifications and salaries of elected officials. The Meigs County and Portage County boards of elections rejected the petitions filed in their counties because they failed to provide for a county executive under R.C. 302.02.

**{¶ 6}** In denying relators' protests, Secretary Husted reasoned that the petitions were invalid because the proposed charters failed to provide for the performance of all duties imposed on county officers. He also indicated that while the petitions could be interpreted as attempting to establish an alternative form of government under R.C. Chapter 302, the proposed charters failed to provide for either an elective or appointive county executive. He now argues that the petitions are invalid because the proposed charters do not include the information required under Article X, Section 3 of the Ohio Constitution to constitute a valid county charter.

**{¶ 7}** Relators contend that the secretary of state's and the boards of elections' pre-election examination of the content of the proposed charters violated their constitutional rights; alternatively, they argue that the secretary of state and the boards of elections abused their discretion in conducting the pre-election review. They contend that the proposed charters do include a form of government and do provide for the exercise of all necessary powers and duties.

### *Legal analysis*

#### *Pre-election review of the proposed charters*

**{¶ 8}** Article X, Section 3 of the Ohio Constitution requires a county charter to set forth certain information.

Every such charter shall provide the form of government of the county and shall determine which of its officers shall be elected and the manner of their election. It shall provide for the exercise of all powers vested in, and the performance of all duties imposed upon counties and county officers by law.

{¶ 9} We have previously determined that it is within the secretary of state's discretion to determine whether a proposed county charter is invalid on the ground that it does not set forth the form of government, "which is the sine qua non of a valid charter initiative." *State ex rel. Walker v. Husted*, 144 Ohio St.3d 361, 2015-Ohio-3749, 43 N.E.3d 419, ¶ 24. Similarly, the county boards of elections have the authority "to review, examine, and certify 'the sufficiency and validity of petitions.' " *Id.* at ¶ 11, quoting R.C. 3501.11(K).

{¶ 10} Relators, however, claim that permitting any pre-election review of the content of their proposed charters violates their First Amendment rights and ask us to overturn *Walker* "to the extent that it authorizes pre-election review of the substance of the Charters at issue."

{¶ 11} *Walker*, however, does not stand for the proposition that the secretary of state or a board of elections may conduct a substantive review of the content of a proposed charter; instead, *Walker* recognizes the authority of election officials to determine whether a charter initiative meets the threshold requirements for inclusion on the ballot. Here, as in *Walker*, the boards of elections and the secretary of state invalidated the petitions on the grounds that the proposed charters failed to set forth the information required under Article X, Section 3 of the Ohio Constitution. Their determinations were consistent with our prior decisions authorizing election officials to determine whether a proposal exceeds the scope of the authority under which it is placed on the ballot. *See, e.g., State ex rel. Choices for South-Western City Schools v. Anthony,* 108 Ohio St.3d 1, 2005-Ohio-5362, 840

N.E.2d 582 (determining that the board of elections did not abuse its discretion by refusing to place an attempted levy repeal on the ballot under a statutory provision authorizing ballot measures for levy reductions).

{¶ 12} Relators further contend that the secretary of state and the boards of elections violated another fundamental right—an asserted right to local self-government—by imposing requirements on a county charter petition. However, we are reluctant to consider the broader application of Article X, Section 3 in the context of this expedited mandamus case, which seeks to place specific proposals on the ballot. Relators have failed to persuasively demonstrate why we should recognize a new fundamental right in the current proceeding.

{¶ 13} Moreover, there is no indication that the boards of elections or the secretary of state attempted to thwart the principles of local self-government. They did not deny relators the right to establish a charter form of county government; instead, they merely examined the charter initiatives to determine whether they met the threshold requirements for inclusion on the ballot.

{¶ 14} Pursuant to *Walker*, the secretary of state and the boards of elections did not violate relators' constitutional rights by examining the proposed county charters to determine whether they included the information required under Article X, Section 3 to constitute a valid charter initiative.

*Validity of the petitions under Article X, Section 3*

{¶ 15} In support of his decision denying relators' protests, Secretary Husted argues that the proposed charters were deficient for failing to provide for the exercise of "all powers" vested in, and for failing to provide for the performance of "all duties" imposed upon, counties and county officers. The boards of elections of Athens and Portage Counties similarly contend that the proposed charters failed to adequately provide for the exercise of these powers and the performance of these duties.

**{¶ 16}** The proposed charters include broad language ostensibly fulfilling this requirement. Other than the name of the specified county, the language in all three proposals is identical. The relevant charter language states:

> The County * * * is responsible within its boundaries for the exercise of all powers vested in, and the performance of all duties imposed upon, counties and County officers by general law * * *. * * *
>
> When not prescribed by the Charter or by amendment to this Charter, by local law enacted by the County Commissioners, or by local law enacted by the people, such powers shall be exercised in the manner prescribed by the Constitution of Ohio or by general law.

**{¶ 17}** Secretary Husted and the boards of elections reasonably determined that this language is insufficient to provide for the exercise of all powers vested in, and the performance of all duties imposed upon, counties and county officers. As in *Walker*, the powers and duties are not individually delineated, forcing one to "look to sources outside the proposed charters to determine the form of government they purport to establish, and therefore they do not satisfy the legal prerequisites." *Walker*, 144 Ohio St.3d 419, 2015-Ohio-3749, 43 N.E.3d 419, at ¶ 23.

**{¶ 18}** Accordingly, we conclude that the secretary of state and boards of elections did not abuse their discretion in determining that the proposed county charters fail to satisfy the requirements under Article X, Section 3 of the Ohio Constitution for a valid charter initiative.

Writ denied.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, and FRENCH, JJ., concur.

KENNEDY, J., concurs in judgment only.

O'NEILL, J., dissents, with an opinion.

_____

**O'NEILL, J., dissenting.**

{¶ 19} Respectfully, I must dissent.

{¶ 20} R.C. Chapter 302 regulates adoption of an "alternative form of county government." For at least two reasons, the provisions in Chapter 302 are separate and distinct from the review of the validity of a charter petition submitted under Article X, Section 3 of the Ohio Constitution.

{¶ 21} First, Article X, Section 3 makes no mention of "alternative form[s] of county government." Article X, Section 3 authorizes the people of a county to "frame and adopt or amend a charter." That section does not empower the General Assembly to further limit the form of county government that may be enacted *by the people*. Article X, Section 3 states generally that a "charter shall provide the form of government of the county and shall determine which of its officers shall be elected and the manner of their election." The proposed charters at issue here accomplish this by reference to some but not all of the provisions of the Revised Code.

{¶ 22} And why not? The majority would prefer that relators reinvent the wheel of government in one document. I disagree.

{¶ 23} Second, Article X, Section 1 is the only portion of the Ohio Constitution that does mention "alternative forms of county government." On a plain reading, that section requires the General Assembly to create counties and authorizes the General Assembly to offer "alternative forms of county government" that may be submitted to and adopted *by the electors of the various counties*. The adjectival use of "alternative" suggests a circumstance in which several options are made available and one option may be chosen. To the extent that R.C. Chapter 302 provides several frameworks for a county government that may be adopted by a

majority of the electors of a county, the law comports with Article X, Section 1 of the Ohio Constitution. There is no conflict here.

{¶ 24} To the extent that the secretary of state asks this court to apply the provisions of the Revised Code to limit the form of government that the people may adopt for themselves through Article X, Section 3, that interpretation exceeds the constitutional authority of the General Assembly and the secretary of state by invading the broad power reserved to the people. The secretary of state does not have the power to veto charter petitions on behalf of the oil and gas industry simply because the citizens did not pick exclusively from the two forms of county government delineated in R.C. 302.02.[3] This is a usurpation of power from the people that we should not indulge.

{¶ 25} Although not required by Article X, Section 3, the General Assembly provided statutory ballot access for citizens who wish to propose a new county charter. *See* R.C. 307.94 and 307.95. Given the reticence that the various boards of elections and secretary of state have shown toward the people and their attempts to self-govern, I refer all interested Ohioans to Article X, Section 4, which provides for an alternative form of ballot access:

> The legislative authority of any county, upon petition of ten per cent of the electors of the county, shall forthwith, by resolution, submit to the electors of the county, in the manner provided in this section for the submission of the question whether a charter commission shall be chosen, the question of the adoption of a charter in the form attached to such petition.

---

[3] R.C. 302.02 names two alternative forms, the "elective executive plan" and the "appointive executive plan." R.C. 302.02 refers to the applicable statutory provisions that define each plan.

**{¶ 26}** The citizens of all 88 counties have the right to choose their form of county government. The majority limits the right of the citizens of Athens, Meigs, and Portage Counties to choose a charter.

**{¶ 27}** To be clear, I dissent.

_____

James Kinsman and Terry J. Lodge, for relators.

Michael DeWine, Attorney General, and Nicole M. Koppitch and Brodi J. Conover, Assistant Attorneys General, for respondent Secretary of State Jon Husted.

Keller J. Blackburn, Athens County Prosecuting Attorney, and Zachary L. Saunders, Assistant Prosecuting Attorney, for respondents Athens County Board of Elections and its members.

Victor V. Vigluicci, Portage County Prosecuting Attorney, and Denise L. Smith and Charmine Ballard, Assistant Prosecuting Attorneys, for respondents Portage County Board of Elections and its members.

Chad A. Endsley, Leah F. Curtis, and Amy M. Milam, urging denial of the writ for amici curiae Ohio Farm Bureau Federation, Athens-Meigs Farm Bureau, and Portage County Farm Bureau.

Porter, Wright, Morris & Arthur, L.L.P., L. Bradfield Hughes, and Kathleen M. Trafford, urging denial of the writ for amici curiae Ohio Chamber of Commerce, Affiliated Construction Trades Ohio Foundation, and the American Petroleum Institute.

McTigue & Colombo, L.L.C., and Donald J. McTigue, urging denial of the writ for amici curiae Affiliated Construction Trades Ohio Foundation and the American Petroleum Institute.

Vorys, Sater, Seymour & Pease, L.L.P., Lisa Babish Forbes, Aaron M. Williams, and Natalia Cabrera, urging denial of the writ for amicus curiae Ohio Oil and Gas Association.

_____