NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4286

THE STATE EX REL. LUONUANSUU ET AL., *v.* KING, CLERK, ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Luonuansuu v. King*, Slip Opinion No. 2020-Ohio-4286.]**

*Elections—Mandamus—Writ of mandamus sought to compel board of elections to place referenda on four local ordinances on the November 2020 ballot—Relators failed to present sufficient evidence to establish their right to extraordinary relief—Writ denied.*

(No. 2020-0952—Submitted August 26, 2020—Decided September 2, 2020.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In this expedited election case, relators, James Luonuansuu and Patrick Layshock, seek a writ of mandamus to compel the placement of four referendum petitions on the November 2020 ballot. The complaint names as respondents Kathleen King, clerk of Newton Falls, and the Trumbull County Board

of Elections and board members Kathi Creed, Ronald Knight, and Diana Marchese (collectively, "the board").

{¶ 2} For the reasons set forth below, we deny the writ. Further, given this disposition, we deny as moot King's motion to strike relators' second reply brief.

## I. BACKGROUND

### A. The referendum process

{¶ 3} Article II, Section 1f of the Ohio Constitution provides, "The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law." Section 2 of the Newton Falls Charter preserves for its citizens the right of referendum "upon ordinances and action taken by Council as prescribed in the Constitution of the State of Ohio and as set forth in the general laws of the State of Ohio." Under the general law of the state, "any ordinance * * * passed by the legislative authority of a municipal corporation shall be subject to the referendum," R.C. 731.29, with some relevant exceptions discussed below.

{¶ 4} The referendum process begins with the submission of a petition, signed by a sufficient number of electors, to the village clerk or city auditor within 30 days after the ordinance is passed. *Id.* The clerk must hold the petition for ten days and then transmit it to the county board of elections, along with a certified copy of the ordinance or measure in question. *Id.* Then, within ten days, the board of elections must examine all signatures on the petition and return the petition to the clerk with a statement attesting to the number of valid signatures on the petition. *Id.* Then, after the clerk certifies "the sufficiency and validity of the petition" to the board of elections, the board of elections must submit the ordinance to the voters for approval or rejection at the next general election occurring at least 90 days after the clerk's certification. *Id.*

{¶ 5} There are two relevant exceptions to the right of referendum. First, emergency ordinances "necessary for the immediate preservation of the public peace, health, or safety" are not subject to referendum and "shall go into immediate effect." R.C. 731.30. And second, when a municipal legislative authority "is required to pass more than one ordinance * * * to make and pay for any public improvement," only the first ordinance is subject to referendum. *Id.* The subsequent ordinances, which are not subject to referendum, are referred to as "administrative" measures. *See State ex rel. Oberlin Citizens for Responsible Dev. v. Talarico*, 106 Ohio St.3d 481, 2005-Ohio-5061, 836 N.E.2d 529, ¶ 22-23, 31.

### B. The evidence in the record

*1. The meter ordinances (Ordinances 2020-10 and 2020-26)*

{¶ 6} On June 1, 2020, the Newton Falls City Council[1] enacted Ordinance 2020-10, which authorized the city manager to enter into a contract with Gardiner Service Company, L.L.C., for an "Automated Meter Implementation" project ("the first meter ordinance"). On June 29, 2020, King received a petition for a referendum on the first meter ordinance. After holding the petition for ten days, she delivered it to the Trumbull County Board of Elections for signature verification. The board of elections verified the signatures and King retrieved the petition on July 17.

{¶ 7} In the meantime, on July 6, before the city manager executed the contract authorized by the first meter ordinance, the council enacted Ordinance 2020-26, captioned "An Ordinance Repealing Ordinance 2020-10 and Enacting Ordinance 2020-26 Authorizing the City Manager to Enter Into and Execute a Contract for an AMI Implementation Project with Gardiner Service Company,

---

1. Although Newton Falls has a number of attributes of a "city," including that it is governed by a city council and has a city manager, it is technically a village based on its population following the 2010 federal census. *See State ex rel. Lange v. King*, 144 Ohio St.3d 349, 2015-Ohio-3440, 43 N.E.3d 409, ¶ 8.

[L.L.C.], and Declaring an Emergency" ("the second meter ordinance"). The second meter ordinance authorized the city manager to enter into an amended contract.

{¶ 8} King sent the petition for referendum on the first meter ordinance to the board on July 21, 2020, along with a cover letter informing the board that the first meter ordinance "was repealed by Newton Falls City Council on Monday, July 6 with the passage of [the second meter ordinance]." According to her affidavit filed in this case, King intended the letter to be a statement that, as a result of the passage of the second meter ordinance, "a referendum on [the first meter ordinance] would be futile." She closed her letter to the board with a request for "a formal review" of the petitions in support of referenda on the first meter ordinance and Ordinance 2020-15 (discussed below) "to determine whether either of these ordinances are subject to referendum."

{¶ 9} On July 30, 2020, King received a petition calling for a referendum on the second meter ordinance. King delivered the petition to the board for signature verification on August 10, and the board completed the process by August 13. In her affidavit, King explains that on August 17, she "exercised [her own] authority set forth in R.C. 731.29 to determine 'the sufficiency and validity of the petition' " and rejected the petition on the ground that the second meter ordinance was an emergency measure and therefore not subject to referendum.

*2. The law-director ordinance (Ordinance 2020-15)*

{¶ 10} The Newton Falls charter creates a Department of Law, to be headed by "the Director of Law." The Newton Falls Council has the authority to appoint and remove the law director. On June 1, 2020, the council enacted Ordinance 2020-15, which authorized the city manager to enter into an extension of the employment contract with the current law director ("the law-director ordinance").

{¶ 11} On June 29, King received a petition for a referendum on the law-director ordinance. The board verified the signatures, and King validated the

petition and sent it to the board, again raising concerns about the referendum in the cover letter. Specifically, King informed the board that a referendum petition over the same issue had been circulated in 2009, and the board had not allowed it on the ballot. "It is my understanding," she wrote, "that only legislative acts are subject to referendum and administrative acts are not subject to referendum." She requested a "formal review" of the petition.

*3. The bond ordinance (Ordinance 2020-19)*

{¶ 12} On June 24, 2020, the Newton Falls Council approved Ordinance 2020-19, which authorized the issuance of bonds to fund the purchase and renovation of real property for use as a municipal building ("the bond ordinance"). On July 20, King received a petition for a referendum on this ordinance, as well. The board verified the signatures, and following her review and validation, King transmitted the petition to the board on August 17. Once again, King attached a cover letter questioning whether the ordinance was subject to referendum.

## II. PROCEDURAL HISTORY

{¶ 13} On August 5, 2020, Luonuansuu and Layshock filed a mandamus complaint against King and the board. The board filed its answer on August 10, and two days later, Luonuansuu and Layshock filed a merit brief in response to that pleading. King filed her answer on August 14, and Luonuansuu and Layshock responded by filing a second merit brief on August 17, addressing her answer. King and the board each filed merit briefs, and relators filed separate, largely repetitive, reply briefs addressed to each of those briefs.

{¶ 14} Respondents did not object to relators' filing of two merit briefs. But on August 20, King filed a motion to strike the second reply brief. Luonuansuu and Layshock have filed a memorandum in opposition to that motion.

## III. LEGAL ANALYSIS

### A. The merits of the mandamus claims

{¶ 15} To be entitled to a writ of mandamus, a party must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, 13. The relator in a mandamus action bears the burden of proof, which is heightened due to the extraordinary nature of the relief sought. *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, ¶ 56.

{¶ 16} Yet in this case, relators have failed to present evidence to establish even the most basic facts of their claims. Their evidence consists of a defective affidavit,[2] copies of the four relevant ordinances, a copy of an Ohio Senate bill,[3] a March 2016 document labeled "Drafting Resolutions and Ordinances, 2016 Local Government Officials Conference," purportedly from a seminar sponsored by the "Auditor of the State," excerpts from the Newton Falls city charter, and a letter from King to the board of elections, dated December 22, 2009, that related to an 11-year-old referendum petition. These documents are not sufficient to entitle relators to relief with respect to any of the four petitions.

{¶ 17} The chronology in Luonuansuu's affidavit stops on July 30 with the presentation of the final petition to King, without discussing the disposition of the

---

2. Relators submitted an affidavit from Luonuansuu based on his "*belief* and personal knowledge" that the facts contained therein were "true and correct *to the best of his knowledge*." (Emphasis added.) But affidavits in support of an original-action complaint must be "made on personal knowledge" of the affiant, S.Ct.Prac.R. 12.02(B)(2), and an affidavit made "to the best of [the affiant's] knowledge, information, and belief" is insufficient. *State ex rel. Walker v. Husted*, 144 Ohio St.3d 361, 2015-Ohio-3749, 43 N.E.3d 419, ¶ 25; *see also State ex rel. Simonetti v. Summit Cty. Bd. of Elections*, 151 Ohio St.3d 50, 2017-Ohio-8115, 85 N.E.3d 728, ¶ 11 (an affidavit made "to the best of" the affiant's personal knowledge or information does not satisfy the requirement).

3. According to relators, the bill purports to demonstrate the "Correct Format for Repealing [a] Clause" of the Ohio Revised Code.

petitions. Relators allege in their complaint that on August 4, the board of elections rejected the petitions for referenda on the first meter ordinance and the law-director ordinance, but the board's answer expressly denies these allegations. The record therefore contains no evidence to establish that the board rejected these petitions or, if so, the reason(s) for those rejections. As for any factual statements contained in the parties' merit briefs, " '[t]he briefs and memoranda of the parties are not evidence.' " *Smith v. Smith*, 9th Dist. Summit Nos. 27988 and 27991, 2017-Ohio-360, ¶ 10, quoting *Bank One, Columbus, N.A. v. O'Brien*, 10th Dist. Franklin Nos. 91AP-166 and 91AP-441, 1991 WL 281429, *5 (Dec. 31, 1991).

{¶ 18} With respect to the bond ordinance, relators alleged in their complaint that the board verified the signatures on August 4 but that King had not certified the petition to the board for placement on the ballot. But relators filed their suit only one day after the board verified the signatures. According to her affidavit, King transmitted the petitions to the board on August 17.[4] Here again, there is no evidence in the record to show what the board did with the petition, or that the board has even taken any action at all on the petition.

{¶ 19} Only with respect to the second meter ordinance is there evidence of the petition's current status. As noted above, King states in her affidavit that she rejected that petition herself, on August 17, based on her assessment that the second meter ordinance was an emergency measure and therefore not subject to referendum. But that evidence did not come from relators, so once again, they have failed to meet their evidentiary burden. More problematic, though, is the fact that because this occurred after the complaint was filed, any challenge to King's decision falls outside the scope of the pleadings. In fact, even in their merit briefs, relators continue to insist that they are entitled to the same relief they sought in their

---

4. "In extraordinary-writ cases, courts are not limited to the facts at the time a proceeding is commenced, but should consider facts at the time it determines whether to grant the writ." *State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, 874 N.E.2d 516, ¶ 11.

complaint—a writ of mandamus compelling placement of the referendum on the ballot—even though that is not the relief to which they would be entitled if they prevailed in a challenge to King's decision.

{¶ 20} In sum, relators have failed to present evidence establishing their right to relief by clear and convincing evidence. Therefore, the request for a writ of mandamus is denied.

### B. The motion to strike

{¶ 21} When a case involves multiple respondents filing separate merit briefs, a relator may file only one reply brief responding to all the arguments. S.Ct.Prac.R. 16.04(A)(3) (applicable to expedited election cases by S.Ct.Prac.R. 12.07 and 12.08(A)(2)). Relators violated this rule by filing two reply briefs. Moreover, the two reply briefs total 24 pages of text, which exceeds the 20-page limit set by S.Ct.Prac.R. 16.04(B)(1). Based on these rule violations, King has asked the court to strike the second reply brief. However, given our disposition of the mandamus claims, these violations are ultimately inconsequential. We therefore deny as moot the motion to strike the second reply brief.

### IV. CONCLUSION

{¶ 22} For the reasons discussed, we deny the writ of mandamus and deny the motion to strike as moot.

Writ denied.

O'CONNOR, C.J., and FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

KENNEDY and DEWINE, JJ., concur in judgment only.

_____

James Luonuansuu and Patrick Layshock, pro se.

Calfee, Halter & Griswold, L.L.P., James F. Lang, Kelly A. Callam, and Brandon E. Brown, for respondent Kathleen King.

Dennis Watkins, Trumbull County Prosecuting Attorney, and Michael J. Fredericka and Jason M. Toth, Assistant Prosecuting Attorneys, for respondents Kathi Creed, Ronald Knight, Diana Marchese, and the Trumbull County Board of Elections.

_____