[Cite as *In re K.M.*, 2023-Ohio-4349.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

IN RE: K.M.

C.A. No.     22AP0047

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.     2021 JUV-G 955

DECISION AND JOURNAL ENTRY

Dated: December 4, 2023

SUTTON, Presiding Judge.

{¶1}     Appellant-Mother Brittany Patton appeals from the judgment of the Wayne County Court of Common Pleas, Juvenile Division, granting legal custody to Appellee-Father Jordan Moser.  This Court reverses.

I.

{¶2}     Brittany Patton ("Mother") and Jordan Moser ("Father") are the biological parents of K.M., born April 17, 2019.  The parties lived together and were in a romantic relationship from the time of K.M.'s birth until the parties separated in July of 2021.

{¶3}     Between July of 2021 and October of 2021, the parties, by all accounts, successfully co-parented, communicated well, and worked together to come up with their own parenting time arrangement that allowed both parents to have parenting time with the child.  During the week, Father worked first shift and would drop the child off at a babysitter's home.  Mother, who worked

third shift, would pick the child up in the late afternoon or early evening and she would spend time with the child before she went to work. Mother would drop the child off at Father's home to sleep.

{¶4} In October of 2021, Mother secured a position working first shift at her place of employment. At the same time, Mother filed a request in October 2021 for child support through Wayne County Child Support Enforcement Agency. After receiving notice of the request for child support, Father filed a complaint for the allocation of parental rights and responsibilities that gave rise to the current action.

{¶5} Both Mother and Father testified at a final hearing on January 28, 2022. Based on the testimony and evidence presented at that hearing, the magistrate issued a decision on March 10, 2022. The magistrate found that the "record supports a finding of legal custody to Mother subject to a clear and substantial parenting order for Father would be in the child's best interest." The magistrate also issued a separate entry ordering Father to pay Mother child support in the amount of $191.15. On March 15, 2022, the trial court issued a judgment entry adopting the magistrate's decision as an order of the court.

{¶6} On March 21, 2022, Father filed objections to the magistrate's decision, and filed specific objections on April 22, 2022, after the parties received a transcript of the final hearing. Father's main argument was that the magistrate incorrectly found that it was in the child's best interest for Mother to have sole legal custody. Mother filed a response in opposition to Father's objections.

{¶7} On August 9, 2022, the trial court issued a decision sustaining Father's objections and giving Father sole legal custody of the child. The trial court issued a parenting time order that allowed the parents to share equally in time with the child. The trial court also ordered Mother to

pay Father monthly child support in the amount of $243.09 per month in addition to $17.29 in monthly cash medical support.

{¶8} It is from that order that Mother appeals, assigning three errors for this Court's review.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ABUSED ITS DISCRETION IN OVERTURNING THE MAGISTRATE'S DECISION AND AWARDING CUSTODY TO FATHER.**

{¶9} In her first assignment of error, Mother argues that the trial court abused its discretion in declining to adopt the magistrate's decision. For the reasons that follow, we agree.

Standard of Review

{¶10} "Generally, the decision to adopt, reject, or modify a magistrate's decision lies within the discretion of the trial court and should not be reversed on appeal absent an abuse of discretion." *Niederst v. Niederst*, 9th Dist. Summit No. 28846, 2018-Ohio-5320, ¶ 10, quoting *Barlow v. Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, ¶ 5. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 (1983). When applying this standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶11} Here, at the time K.M. was born, Mother and Father were not married. Pursuant to R.C. 3109.042, "[a]n unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating

another person as the residential parent and legal custodian." Therefore, Mother was the sole residential parent and legal custodian of K.M. until the trial court issued a decision otherwise.

{¶12} After hearing all of the evidence and weighing the credibility of the witnesses presented at the final hearing, the magistrate maintained Mother's legal custody but also awarded substantial parenting time to Father. In making that determination, the magistrate found:

> The record supports a finding that legal custody to Mother subject to a clear and substantial parenting time order for Father would be in the child's best interest. Concerns for Mother's mental health are not as substantial as those pertaining to Father's ability to make consistently reasonable parenting decision and to facilitate a positive relationship between child and Mother.

In support of this conclusion, the magistrate noted the following testimony from Father regarding parenting time.

> Father accused Mother of threatening to withhold the child from parenting time and of forcing parenting time changes unilaterally. This claim illustrated an unrealistic or unreasonable expectation Father has regarding co-parenting of the child. Father appears to have expected [] to continue providing [care] for the child every night – as if Mother still worked third shift – and then Mother to then exercise her time entirely during the day – when she works. This would later be completely dysfunctional once the child started school, at which point only Father would have any meaningful parenting time with the child.

Regarding the difficult custody exchange that occurred between Mother and Father on January 5, 2022, the magistrate noted: "Father acknowledged swearing in the incident but testified that swearing is appropriate around a three-year-old because 'everyone says bad words.'"

Father's Objections

{¶13} After the magistrate issued his decision, Father objected to the decision. Father objected to the Magistrate's findings that legal custody to Mother would be in the child's best interest. Father's main objections centered around: (1) the magistrate's concern that the child does not have her own bedroom at Father's house and the number of children present in the home when Father's girlfriend stays there with her children; (2) the magistrate's finding that the child

was comfortable in Mother's home; (3) the magistrate not giving greater weight to Mother's mental health concerns; and (4) the magistrate noting that "the parties had no issues with parenting time until Mother changed shifts and requested more time[.]"

{¶14} With regard to Father's objections, Juv.R. 40(D)(4)(d) provides that "the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence[.]" The trial court must decide "'whether the magistrate has properly determined the factual issues and appropriately applied the law, and, where the magistrate has failed to do so, the trial court must substitute its judgment for that of the magistrate.'" *In re M.C.M.*, 8th Dist. Cuyahoga No. 106040, 2018-Ohio-1307, ¶ 1.

## Trial Court's Decision

{¶15} On appeal, Mother argues that it was unreasonable and arbitrary for the trial court to overturn the magistrate's decision because the evidence in the record supported the legal conclusion reached by the magistrate. The trial court, in overturning the magistrate's decision and awarding legal custody to Father, made the following conclusion:

> Considering the factors of R.C. 3901.04(F), the factors are nearly evenly divided in favor of each parent. Mother and Father each provide the child with a loving home and are capable of tending to her needs and interests. Because the parents decided not to agree to a shared parenting arrangement, this Court is forced to choose between the two parents. In reviewing the record thoroughly, this [c]ourt finds that granting Father primary custody favors the child's best interest slightly more than Mother.

> While the child has strong relationships with both parents, Father was the primary caretaker until Mother switched from night to day shift. Regarding child's relationship with her brother, the [c]ourt encourages the child to spend time with him to maintain stability in the sibling relationship and prevent sibling disconnect. Although the Magistrate raised concern about Father's lack of awareness of having the children share a bedroom, this bedroom arrangement is the same as when Mother lived in the household. At this time, sharing a bedroom is not a concern.

Obviously Father will need to address the bedroom situation as the children get older.

While the child may not have genuine ties to a school or community right now, Father had support persons available to him nearby. There are difficulties in being a single parent. Father lives a few minutes away from the child's [grand]parents, uncles, daycare, and potential elementary school. The child's paternal grandmother fills in as daycare when needed. Furthermore, Father's work schedule would allow him to pick up the child after school. These factors will provide the child with additional support and stability.

Furthermore, there is a concern with Mother's mental health. The text messages introduced were troubling. Mother testified that she was joking in the text messages, but there was nothing to support this claim. Furthermore, Father's response to the message appears to be a genuine concern for Mother's mental health and a desire for her to seek help from a mental health professional.

While Mother is appropriate in having concerns about Father's behavior during the January 5th exchange, the [c]ourt cannot find, based on the limited information before it, that there is a pattern of aggressive behavior. This clearly should not occur in the future. The [c]ourt also notes that both parents have struggled to communicate and, at times, flat-out ignored the other parent, particularly on some of the larger financial issues that the parties are dealing with.

**{¶16}** Here, we agree with Mother that the trial court's decision was unreasonable because it is based on several factual conclusions that are not reflective of the record. The trial court noted that Father was the primary caretaker until Mother switched from third shift to first shift. However, the testimony indicates that the child spent most of her day in daycare. While the parties were living apart and Mother was working third shift, Father would drop the child off at daycare early in the morning, at about 6:00 am. Mother would then pick the child up around 5:45 pm and spend a few hours with the child, before dropping the child off at Father's house. Father would put the child to bed. Prior to the parties separating, Mother and Father were co-parenting together and living in the same house. Additionally, Father testified at trial that Mother stayed at home with the child when the child was first born. It was only from July 2021 until October 2021, after Mother terminated the romantic relationship, that Mother and Father were living separately while

Mother worked third shift and Father spent more time with the child. The majority of the time Father spent with the child during this period was during the late evening hours and overnight when the child was presumably sleeping.

{¶17} Regarding the sleeping situation at Father's home, the magistrate found that Father failed to "demonstrate an understanding that, as children age, they will benefit from separate spaces and established boundaries that encourage privacy – particularly given the children's differing genders." In addressing this concern expressed by the magistrate, the trial court wrote:

> Although the magistrate expressed concern about Father's lack of awareness of having the children share a bedroom, this bedroom arrangement is the same as when Mother lived in the household. At this time, sharing a bedroom is not a concern. Obviously Father will need to address the bedroom situation as the children get older.

It was unreasonable for the trial court to state that Father will need to address this issue in the future, when what the magistrate determined was that Father failed to demonstrate an understanding that this is even a problematic issue. Further, the trial court's ruling on the objections also unreasonably ignores the magistrate's factual finding, supported by the evidence in the record, that the sleeping situation at Father's house is "exacerbated when Father's paramour spends the night with her children there, which adds a newborn and a one-year-old to Father's room with his paramour and adds a five-year-old, unrelated child to [K.M.]'s bedroom."

{¶18} In sustaining Father's objections, the trial court also unreasonably emphasized its concerns for Mother's mental health. The trial court noted that while Mother testified she was joking in the text messages, there "was nothing to support this claim." The trial court's conclusion is unreasonable, however, in that it ignores Mother's own testimony giving context to the text messages and explaining why they were a joke. Mother testified that she has never been diagnosed with depression and testified she was not currently depressed. Further, with regard to Mother's

mental health, it was Father's own testimony that denied any alleged depression on Mother's part interfered with her relationship with the child. He also testified that Mother had a strong bond with the child and was a good mother. With respect to his alleged concerns about Mother's depression, Father testified that "[s]he never wanted to leave the house, she never wanted to do anything." However, on cross-examination, he admitted that during the time Mother was staying in bed and sleeping a lot during the day, she was working third shift.

{¶19} In sustaining Father's objections, the trial court noted that "[w]hile Mother is appropriate in having concerns about Father's behavior during the January 5th exchange, the [c]ourt cannot find, based on the limited information before it, that there is a pattern of aggressive behavior." With regard to the January 5, 2022 incident, the trial court's ruling ignores the following testimony given by Father at the final hearing:

Q:          Do you think it's appropriate for a 2-year-old child to hear cuss
            words?

[FATHER]:   Everyone says bad words.

Q:          That wasn't my question, my question is do you feel it is appropriate
            to use inappropriate language in front of a 2-year-old?

[FATHER]:   Probably not.

Q:          But you choose to do it anyway?

[FATHER]:   I do.

Here, Father is acknowledging using "cuss words" in front of the child and admits that it is "probably not" appropriate to use that language in front of the child, but that he chooses to do it anyway. The use of curse words can be seen as verbally aggressive behavior and Father admitted that he engages in that behavior in front of the child. Therefore, it was unreasonable for the trial court to discount that behavior in concluding that Father has not demonstrated a pattern of

aggressive behavior because that finding is unsupported by Father's own testimony. *See Lykins v. Lykins*, 12th Dist. Clermont Nos. CA2017-06-058, CA2017-06-032, 2018-Ohio-2144, ¶ 27 (Husband's "unbecoming, aggressive behavior" included cursing at guardian ad litem.); *In re: L.R.B*, 2d Dist. Montgomery 28826, 2020-Ohio-6642, ¶ 39, 65 (Mother's aggressive behavior towards MCCS staff included cursing.); *State v. Corbin*, 12th Dist. Fayette No. CA2010-01-001, 2010-Ohio-3819, ¶ 53 ("[A] male * * * was seen exhibiting "very violent behavior, aggressive behavior" by "yelling, cussing, screaming at a female[.]").

{¶20} Additionally, the trial court stated that Father has support persons available to him nearby that "will provide the child with additional support and stability[,]" noting that "[t]here are difficulties in being a single parent." However, the trial court unreasonably ignored Mother's testimony that she planned to move into her father's home from her apartment, potentially providing the same support for Mother.

{¶21} Based on this record, the trial court: (1) incorrectly concluded that Father was the primary caretaker of the child; (2) ignored the magistrate's concerns regarding sleeping arrangements; (3) imputed concerns for Mother's mental health despite a lack of evidence in the record that any depression on Mother's part interfered with her ability to care for, or affected her relationship with, the child; (4) ignored Father's own testimony regarding aggressive behavior; and (5) emphasized Father's support system without acknowledging Mother's support system. Based on the evidence present in this record, "the court's *attitude* [was] unreasonable" when it sustained Father's objections. (Emphasis added) *Blakemore* at 219. Therefore, we conclude the trial court abused its discretion in sustaining Father's objections when, pursuant to Juv.R. 40(D), the magistrate properly determined the factual issues and appropriately applied the law.

{¶22} Mother's first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED BY FINDING IT WAS IN K.M.'S BEST INTEREST FOR FATHER TO BE NAMED HER SOLE LEGAL CUSTODIAN AND SUCH FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT ABUSED ITS DISCRETION IN ESTABLISHING CHILD SUPPORT AND FAILING TO DEVIATE MOTHER'S CHILD SUPPORT OBLIGATION TO $0.00.**

**{¶23}** Given this Court's resolution of the first assignment of error, we decline to address the second assignment of error as it has been rendered moot and we decline to address the third assignment of error as it is premature.

### III.

**{¶24}** Mother's first assignment of error is sustained. Her second assignment of error is moot and her third assignment of error is premature. The judgment of the Wayne County Court of Common Pleas, Juvenile Division is reversed and the cause is remanded for the court to conduct an independent review of all of the evidence as required by Juv.R. 40(D)(4)(d).

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

BETTY SUTTON
FOR THE COURT

FLAGG LANZINGER, J.
CONCURS.

HENSAL, J.
DISSENTING.

{¶25} This is a close case involving the best interests of the child. Under the circumstances, I believe that the majority opinion misapplies the abuse-of-discretion standard, and I respectfully dissent.

{¶26} Best-interests determinations under Revised Code Section 3109.04(F) are committed to the discretion of the trial court, which must consider the factors listed in the statute and all other relevant factors in reaching its decision. *Armbruster v. Armbruster*, 9th Dist. Lorain No. 19CA011531, 2020-Ohio-3833, ¶ 5-6. In *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983), the Supreme Court of Ohio explained the standard to be used in our review of a decision committed to the discretion of the trial court. The Supreme Court wrote that an abuse of discretion is something more than an error of law or in the exercise of judgment, noting that "it implies that the

court's *attitude* is unreasonable, arbitrary or unconscionable." (Emphasis added.). *Id*. at 219. A court of appeals must not substitute its judgment for that of the trial court. *Id.* Although *Blakemore* is often cited as the general standard for reviewing discretionary decisions, the Supreme Court has provided additional guidance about the nature of an abuse of discretion:

> Stated differently, an abuse of discretion involves more than a difference in opinion: the "'term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations.'" *State v. Jenkins*, 15 Ohio St.3d 164, 222 (1984), quoting *Spalding v. Spalding*, 355 Mich. 382, 384 (1959). For a court of appeals to reach an abuse-of-discretion determination, the trial court's judgment must be so profoundly and wholly violative of fact and reason that "'it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" *Id*., quoting *Spalding* at 384-385.

*State v. Weaver*, 171 Ohio St.3d 429, 2022-Ohio-4371, ¶ 24. In a close case, therefore, this Court should be reluctant to find an abuse of discretion even if we disagree with the conclusion reached by the trial court. *See State ex rel. Walker v. Husted*, 144 Ohio St.3d 361, 2015-Ohio-3749, ¶ 18.

{¶27} The record in this case established that Mother and Father are both capable and loving parents. In fact, each testified about the other to that effect. Undoubtedly, Mother and Father have experienced difficulties in communicating since their romantic relationship ended, but I cannot agree that the aspects of the trial court's decision identified by the majority amount to an abuse of discretion. This is, therefore, a close case in which the trial court exercised its discretion to allocate parental rights and responsibilities with consideration of the factors in Section 3109.04(F). It is inappropriate for this Court to substitute its judgment for that of the trial court when our analysis amounts to a difference of opinion regarding the outcome. *See Weaver* at ¶ 24; *Blakemore* at 219. For this reason, I respectfully dissent.

APPEARANCES:

JESSICA M. TREASE, Attorney at Law, for Appellant.

DANIELLE C. KULIK, Attorney at Law, for Appellee.