[Cite as *State v. Whites Landing Fisheries, L.L.C.*, 2017-Ohio-7537.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No. E-16-040 |
| Appellee | Trial Court No. CRB-14-02342 |
| v. | |
| Whites Landing Fisheries, LLC | **DECISION AND JUDGMENT** |
| Appellant | Decided: September 8, 2017 |

* * * * *

Mike DeWine, Ohio Attorney General, Robert W. Cheugh II
and Kenneth H. Egbert, Jr., Assistant Attorneys General,
for appellee.

William H. Smith, Jr. and Samuel A. J. Sidoti, for appellant.

* * * * *

**JENSEN, P.J.**

{¶ 1} Appellant, Whites Landing Fisheries, Inc. ("WLF"), is an Ohio corporation

engaged in the commercial fishing industry. Dean Koch is WLF's corporate

representative. During the 2014 commercial fishing season, WLF engaged in trap net

commercial fishing in Lake Erie. On June 16, 2014, WLF was charged with one count of possession of undersize fish in violation of R.C. 1533.63, a misdemeanor of the first degree. WLF was found guilty at a trial by jury. WLF appeals. For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} WLF raises seven assignments of error for our review.

### {¶ 3} First Assignment of Error

{¶ 4} In its first assignment of error, WLF asserts:

Jury's finding of guilty is not supported by sufficient probative evidence and the Trial Court erred by overruling Whites Landing [sic] motions to dismiss under Crim.R. 29.

{¶ 5} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

2.

**{¶ 6}** WLF was convicted of possession of undersize fish under R.C. 1533.63, which states, in pertinent part:

No person shall * * * possess a container, quantity, boat load, catch, or haul with more than ten per cent by weight of undersized fish * * * either round, filleted, or headless mentioned in this section or division rule.

* * *

Except as otherwise provided by division rule, no person shall * * * possess * * * a yellow perch less than eight and one-half inches in length.

**{¶ 7}** Because the language defining the offense of possession of undersized fish neither specifies culpability nor plainly indicates a purpose to impose strict liability, the state was required to establish that WLF acted recklessly. R.C. 2901.21(C)(1). A person acts recklessly when, "with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

**{¶ 8}** WLF asserts that the state failed to establish its catch contained more than ten percent, by weight, of undersized fish. The crux of WLF's argument focuses on the credibility of two Ohio Department of Natural Resources ("ODNR") officers who testified on behalf of the state.

**{¶ 9}** On June 13, 2014, Officer Brian C. Bury and Officer Jared Abel, inspected a yellow perch catch in WLF's possession. After measuring and weighing the 1,069 yellow perch in the catch, Officer Bury concluded that 75 pounds of the 320 pounds of

3.

yellow perch were less than 8 3/8 inches in length.[1]  Bury issued a citation asserting that WLF possessed "320 lbs. of yellow perch in the round[2], with 30% being undersized."

{¶ 10} At trial, Officer Bury testified that when he turned over the first container of yellow perch, he observed that the fish on the bottom of the container were smaller than the fish at the top.  He indicated that in the business, this type of container packing is called shingling.

{¶ 11} Officer Bury explained, in some detail, how he weighed and measured all of the yellow perch in the WLF catch.  Officer Bury was unable to produce the measuring board he used during the investigation because months after he used the board in this case, it fell off the back of his truck onto the highway and was run over by another vehicle.

{¶ 12} Officer Abel testified that he observed Officer Bury measure and weigh the yellow perch in WLF's possession on the day in question.  His contemporaneous handwritten notes were admitted into evidence.  The notes indicate "30.9 lbs short" in container one and "short 46.8 lbs" in container two.  The third container of yellow perch contained no short fish.  Officer Abel explained that his handwritten notes further indicate that 245.4 pounds of yellow perch—76.5% of WLF's total yellow perch catch—

---

[1] Officer Bury testified that he gave WLF "an eighth of an inch benefit" when measuring the fish.

[2] "'Round' when used in describing fish means with head and tail intact."  Ohio Adm.Code 1501:31-1-02(BBBBB).

4.

were "GOOD" while 75.2 pounds of yellow perch—23.4% of WLF total yellow perch catch—were "SHORT."

{¶ 13} Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found that WLF recklessly possessed a catch of yellow perch and that more than ten percent of the catch, by weight, were undersized. WLF's conviction was supported by sufficient evidence. WLF's first assignment of error is not well-taken.

**Second Assignment of Error**

{¶ 14} In its second assignment of error, WLF asserts:

Guilty verdict is against manifest weight of the evidence.

{¶ 15} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" *Id.* In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

5.

{¶ 16} Here, WLF's argument centers on the methods the ODNR officers used to measure the fish. While both officers testified that the fish were measured properly, WLF presented testimony from WLF captain Drew Koch that Officer Bury did not follow proper protocol while measuring the fish. Specifically, Koch indicated that Officer Bury did not pinch the mouth shut or flatten out the tail when placing the fish on the measuring board. Koch insisted that WLF "does not take undersize fish." Rather, when WLF employees catch fish in the net that are undersize, they throw the fish back into the water.

{¶ 17} After reviewing the record and deferring to the trier of fact's credibility assessment, we are unable to conclude that the trier of fact lost its way and created a manifest injustice. WLF's conviction is therefore not against the manifest weight of the evidence. WLF's second assignment of error is not well-taken.

### Third Assignment of Error

{¶ 18} In its third assignment of error, WLF asserts:

> The Trial Court erred when it did not qualify Robert Calala as an expert witness and abused its discretion by not allowing him to testify at trial as to his out of court experiment.

{¶ 19} Prior to trial, the state filed a motion in limine seeking to preclude Calala from reporting the results of an experiment he performed which tested the theory that yellow perch shrink when placed on ice. The state argued that the evidence should be excluded because it was irrelevant and would mislead the jury. The state further argued

6.

that the methodology employed by Calala in implementing the test was flawed because "the facts and circumstances of the purported fish shrinkage experiment * * * are different than the facts and circumstances present in this case."

{¶ 20} On May 11, 2016, the trial court conducted a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). At the hearing, Calala indicated that while he has no formal education in the aquatic sciences, he has experience in the industry. Calala, and his family, have been involved in aquaculture and raising fish, including yellow perch, for over 50 years. Calala served as president of the Ohio Aquaculture Association for more than 12 years. Further, Calala has presented to the ODNR at budget meetings, testified against commercial fisherman, and served on advisory panels for aquatic nuisance species.

{¶ 21} Calala testified that he was commissioned by Dean Koch, WLF's corporate representative, to conduct a test "and document the possibility that the length of fish shorten after they have been placed on ice for a period of time." Calala explained that on the morning of July 14, 2015, the WLF crew pulled in several nets from the lake. Calala selected 12 "random samples" of yellow perch from the first net and 13 "random samples" of yellow perch from the last net. Calala measured and tagged the samples. He placed the samples, along with WLF's other yellow perch catch, in containers of ice. When Calala and the crew took the fish to the processor at the end of the day, Calala re-measured the samples. According the Calala, "the majority of the fish shrank a quarter of an inch." One of the fish did not shrink at all.

7.

{¶ 22} At the end of the *Daubert* hearing, the trial court indicated that it would not allow Calala to testify at trial regarding the results of his experiment. Without articulating a specific rational behind its decision, the trial court asserted, "I'm going to find that Mr. Calala is not an expert with regards to the measurement – with regard to expert testimony regarding shrinkage; rate, amount width, length, time, size, etc. of yellow perch caught in Lake Erie[.]"

{¶ 23} The admissibility of expert testimony is a matter committed to the sound discretion of the trial court, and the trial court's ruling will not be overturned absent an abuse of that discretion. *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶ 9. An "abuse of discretion" means more than an error of law or of judgment, it "implies an attitude * * * that is unreasonable, arbitrary, or unconscionable." *State ex rel. Walker v. Husted*, 144 Ohio St.3d 361, 2015-Ohio-3749, 43 N.E.3d 419, ¶ 18.

{¶ 24} Evid.R. 702 permits a witness to testify as an expert in the following circumstances:

> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

8.

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶ 25} "A witness is not presumed to be an expert and the party offering the testimony has the burden to show the witness has the qualifications to testify as an expert." *Hartman v. Erie Ins. Co*., 6th Dist. Wood No. WD-16-022, 2017-Ohio-668, ¶ 61, citing *Tully v. Mahoning Exp. Co.*, 161 Ohio St. 457, 119 N.E.2d 831 (1954), paragraph two of the syllabus.

{¶ 26} For purposes of this analysis, we assume that Calala's testimony "relates to matters beyond the knowledge or experience" of the average juror and that he does possess "specialized knowledge, skill, experience, training, or education." Evid.R. 702(A) and (B). We further assume that the trial court's decision not to allow Calala to testify was based on WLF's failure to demonstrate that the anticipated testimony

complied with the requirements of Evid.R. 702(C), i.e., that the testimony reliably reports the result of a procedure, test, or experiment.

{¶ 27} The theory upon which Calala's experiment is based—that fish shrink when placed on ice—is objectively verifiable and derived from the widely accepted principle that matter contracts when cooled. Evid.R. 702(C)(1) and (2). Thus, the determinative issue is whether the experiment was conducted in a way that would yield an accurate result as required by Evid.R. 702(C)(3).

{¶ 28} The state attacks the methodology employed by Calala in both executing the experiment and recording its results. First, the state argues that Calala did not generate a written report detailing his findings. Photographs were taken of the fish samples both upon retrieval from the nets and upon arrival at the fish processor at the end of the day. Black and white photocopies of the photographs are included in the record. However, the photocopies are of poor quality and have limited evidentiary value.

{¶ 29} Second, the state argues that Calala "had no knowledge whether his tests were conducted under the same conditions as the yellow perch catch in this case." At the *Daubert* hearing, Calala was unable to report what time the fish were caught. He also did not know what time the fish were measured once the samples arrived at the processor. When asked how long the samples were on ice, he simply indicated that the fish were on ice for "approximately five hours."

{¶ 30} Calala referenced a fish shrinkage experiment that had been conducted in South Dakota, the experiment had been performed on walleye—a fish from the same

10.

genus, but different species as the fish in question here. Notably, the South Dakota study made it clear that water temperature played a role in the amount of shrinkage documented. Here, Calala did not record any data regarding water temperature, nor is there any indication that the water temperature on the day of the test was comparable to the water temperature on the day of the WLF citation.

{¶ 31} Third, the state argues that the sample size was too small; only 23 fish were measured in the Calala experiment. "A small sample size rarely provides the statistician enough information to draw credible inferences." Todaro, *The Admissibility of Medical Testimony in Ohio: Daubert, Joiner and Ohio's Relevance-Reliability Standard*, 46 Clev.St.L.Rev. 319, 345 (1998).

{¶ 32} Under Evid.R. 702(C), the trial court was taxed with the duty to independently examine the methodology utilized in Calala's experiment and evaluate the reliability and accuracy of Calala's testimony. Under commonly accepted principles of scientific method, time and temperature are important variables when conducting an experiment of this sort. Data matters, as do sample sizes. All of these issues effect the reliability of Calala's "scientific" experiment.

{¶ 33} We find that it was not unreasonable for the trial court to conclude that Calala's experiment was not conducted in a way that would yield an accurate result under Evid.R. 702(C)(3). Thus, the trial court's decision to exclude Calala's testimony was not an abuse of discretion. WLF's third assignment of error is not well-taken.

11.

## Fourth Assignment of Error

**{¶ 34}** In its fourth assignment of error, WLF asserts:

> The Trial Court erred when it instructed the jury that, "the yellow perch counted, measured and weighed related to the undersized fish catch charge are shown in the exhibits introduced as photographs and the testimony relating to them has been introduced. The Court has ruled that the actual fish will not be introduced in the courtroom during the trial and the presence or absence of the actual fish in the courtroom is not an element of the offense charged."

**{¶ 35}** WLF contends that the trial court abused its discretion when instructing the jury about exhibits, or in this case, the absence of exhibits, introduced at trial. The instruction regarding exhibits, in its entirety, states:

> A number of exhibits and testimony relating to them have been introduced. You may consider whether the exhibits are the same objects and are in the same condition as originally taken by the officers. You will determine what weight the exhibits should be given in light of all the evidence. The yellow perch counted, measured and weighed related to the underside fish catch charge are shown in the exhibits introduced as photographs, and the testimony relating to them has been introduced. The Court has ruled that the actual fish will not be introduced in the courtroom

12.

during the trial and the presence or absence of the actual fish in the courtroom is not an element of the offense charged.

{¶ 36} WLF argues the above instruction was "prejudicial" to them "by highlighting why the yellow perch were not in the courtroom and singling out the fish and misleading the jury into thinking they should not consider the actual fish measurement when they are making their determination." We disagree.

{¶ 37} For purposes of appellate review, "[t]he decision to issue a particular jury instruction rests within the sound discretion of the trial court." *State v. Nichols*, 11th Dist. Lake No. 2005-L-017, 2006-Ohio-2934, ¶ 28. "When considering the appropriateness of a jury instruction, or when a specific jury instruction is in dispute, a reviewing court must examine the instructions as a whole." *Cook v. Admr. Bureau of Workers' Compensation*, 12th Dist. Butler No. CA2017-01-004, 2017-Ohio-5849, ¶ 22, citing *Enderle v. Zettler*, 12th Dist. Butler No. CA2005-11-484, 2006-Ohio-4326, ¶ 35. "If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled." (Citations omitted). *Id.*

{¶ 38} Contrary to WLF's assertion, the instruction does not "instruct the jury to infer" that WLF "possessed" undersize yellow perch. Rather, the instruction explains why the state did not introduce 1,069 dead fish when presenting its case in chief. The instruction places the onus of the decision to exclude the evidence on itself, rather than on one party or the other. Further, the instruction prevents any juror from jumping to an

13.

inappropriate conclusion regarding the fate of the fish. Upon our review of the instructions as a whole, we find the trial court did not abuse its discretion when it instructed the jury that it had ruled the "actual fish [would] not be introduced" at trial. Accordingly, WLF's fourth assignment of error is not well-taken.

**Fifth Assignment of Error**

{¶ 39} In its fifth assignment of error, WLF asserts:

The Trial Court erred when it ruled two internal investigation reports created by the Division of Wildlife concerning two separate complaints Dean Koch filed concerning his treatment by officers on the day in question and in a 1989 investigation were inadmissible to be used as evidence in trial.

{¶ 40} Under this assignment, WLF first contends that the trial court abused its discretion when it refused to allow WLF to introduce evidence concerning an investigation into a complaint Dean Koch filed with the ODNR accusing Officer Bury with "rude and unprofessional behavior." Second, WLF further contends that the trial court abused its discretion when it refused to allow WLF to introduce evidence regarding a 1989 investigation regarding alleged unfair treatment of Dean Koch by ODNR officers.

{¶ 41} Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* "Although relevant, evidence is not admissible if its probative value is substantially outweighed by

the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

{¶ 42} "A trial court has broad discretion in admitting or excluding evidence, and a trial court's ruling on the admissibility of evidence will be upheld absent an abuse of that discretion." (Citation omitted). *State v. Fears*, 8th Dist. Cuyahoga No. 104868, 2017-Ohio-6978, ¶ 40. An abuse of discretion implies that the court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 43} Upon review of the proffered evidence, we find no indication beyond Dean Koch's initial complaints, that the internal investigation found any evidence of bias or misconduct concerning Officer Bury or Officer Abele. Further, we note that neither Officer Bury nor Officer Abele were employed by the ODNR at the time of the 1989 investigation. We find the trial court did not abuse its discretion in refusing to allow the evidence. Accordingly, appellant's fifth assignment of error is not well-taken.

**Sixth Assignment of Error**

{¶ 44} In its sixth assignment of error, WLF asserts:

> The Trial Court erred when it did not allow Rich Stinson to testify about his opinion on yellow perch shrinkage.

{¶ 45} Rich Stinson is a 40 percent owner of WLF. However, Stinson was not qualified as an expert on fish shrinkage and he was not present when the citation was issued to WLF. Thus, the trial court did not abuse its discretion when it determined that

15.

Stinson could not testify as to any physical change that occurs when yellow perch are placed in or on ice. WLF's sixth assignment of error is not well-taken.

**Seventh Assignment of Error**

{¶ 46} In its seventh assignment of error, WLF asserts:

The Trial Court erred when it did not allow testimony as to an Inspector General's report alleging Officer Bury hunted deer on the clock as a Wildlife officer.

{¶ 47} WLF contends that the trial court abused its discretion when it denied WLF the opportunity to cross-examine Officer Bury "concerning the allegation that he was hunting deer while on active duty as a Wildlife officer." WLF alleges that a 2013 report from the Ohio Office of the Inspector General is probative of Officer Bury's truthfulness and that the report is admissible pursuant to Evid.R. 608(B).

{¶ 48} "[U]nder Evid.R. 608(B), the ability of trial counsel to discredit a witness through cross-examination concerning particular conduct of the witness is not absolute; it is limited in its exercise to the court's sound discretion in determining if the inquiry will lead to particular instances of conduct which are clearly probative of untruthfulness." *State v. Williams*, 1 Ohio App.3d 156, 158, 440 N.E.2d 65 (10th Dist.1981). "The trial court may, in the exercise of its sound discretion, decide not to permit such cross-examination." *State v. Smith*, 4th Dist. No. 94 CA 34, 1995 Ohio App. LEXIS 4698 (Oct. 12, 1995).

{¶ 49} Here, the trial court determined, after hearing testimony from Officer Bury outside the presence of the jury, that evidence concerning the investigation into Bury's "alleged misrepresenting of time worked versus time hunting or bagging a deer [would] be inadmissible."

{¶ 50} The report from the Ohio Office of the Inspector General contained the results of an investigation into ODNR officers across the state who may have harvested deer during hours of employment. The 15 page report includes an investigative summary relaying details regarding numerous ODNR employees.

{¶ 51} In regard to Officer Bury, the report indicates that on January 24, 2011, Officer Bury claimed ten hours of pay. However, the total amount of hours accounted for in the officer's unit history log was only 7.5 hours. The report suggests that had Officer Bury worked 10 hours straight, he "would have harvested the deer while on duty." The report further indicates that on January 25, 2011, Officer Bury claimed nine hours of pay. According to his unit history log, Bury checked the deer in while on duty.

{¶ 52} The report indicates that the Office of the Ohio Inspector General found "reasonable cause to believe wrongful acts or omissions occurred." The office recommended that ODNR review the actions of its employees and "determine whether their conduct warrants further administrative action or training." The office further recommended that ODNR review the applicable "time and attendance police, ODNR communication policy, and state of Ohio ethics laws with all personnel." The report was

17.

forwarded for consideration to prosecuting attorneys for 18 counties named in the report. There is no evidence that Officer Bury was never charged with a crime.

{¶ 53} Upon review of the report and proffered testimony, we find the trial court did not abuse its discretion in not allowing testimony regarding the inspector general's time-keeping investigation to be heard by the jury. The allegation did not lead to a conviction nor was the line of questioning "clearly probative of truthfulness or untruthfulness." Thus, WLF's seventh assignment of error is not well-taken.

**Conclusion**

{¶ 54} Based on the foregoing, the judgment of the Sandusky Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24(A).

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                    _____
                                                 JUDGE

Arlene Singer, J.                   

James D. Jensen, P.J.               _____
CONCUR.                                        JUDGE

                                         _____
                                                 JUDGE

18.