[Cite as *Palmer Gardens v. Rodgers*, 2020-Ohio-5040.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Palmer Gardens

    Appellee

v.

Danashia Rodgers

    Appellant

Court of Appeals No. L-20-1003

Trial Court No. CVG-19-13769

**DECISION AND JUDGMENT**

Decided: October 23, 2020

* * * * *

Jeremy W. Levy and Brianna L. Stephan, for appellee.

Kaser S. Bhatti, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} In this forcible entry and detainer action, appellant, Danashia Rodgers, appeals the December 6, 2019 judgment of the Toledo Municipal Court overruling her objections to the September 16, 2019 magistrate's decision that granted a judgment for possession to appellee, Palmer Gardens Apartments ("Palmer Gardens"). For the following reasons, we reverse.

## I. Background and Facts

{¶ 2} On August 27, 2019, the magistrate held a bench trial on Palmer Gardens's complaint. Palmer Gardens presented the testimony of Crystal Hauser, its property manager, and Rodgers testified in her own behalf. The following facts were adduced at the trial.

{¶ 3} In January 2017, Rodgers signed a 12-month lease with Palmer Gardens for an apartment in Palmer Gardens's complex. Under the HUD-subsidized lease, Rodgers's portion of the monthly rent was $78 and was due on the first of the month. At some point that is not clear from the record, Rodgers's portion of the rent was reduced to $25 a month.

{¶ 4} Hauser testified that Rodgers owed Palmer Gardens rent, late fees, and fees for damage to the apartment. On June 6, 2019, Hauser claims to have posted a "NOTICE TO COMPLY OR VACATE" ("10-day notice") on Rodgers's door. The notice states that Rodgers was "in violation of the rules, regulations, rental agreement, and/or obligations or restrictions applicable to your tenancy of the premises * * *." Rodgers's address was on the next line, and typed under her address was "NON PAYMENT [sic] OF RENT" with no further explanation. The notice told Rodgers that her "tenancy will be terminated effective 06/16/2019," and offered her the opportunity to "discuss your termination of tenancy with the Landlord and/or the Landlord's agent within the ten (10) day period of service of this notice." Rodgers denies that she ever received this notice.

{¶ 5} On June 17, 2019, Hauser posted a "NOTICE TO LEAVE PREMISES" under R.C. 1923.04 ("3-day notice") on Rodgers's door. The notice asked Rodgers to leave the premises due to "NON PAYMENT [sic] OF RENT" and stated that her failure to leave could result in an eviction action being filed against her. It also stated that complying with the notice

2.

by leaving the apartment within three days would prevent Palmer Gardens from filing an eviction action.

{¶ 6} After Rodgers received the 3-day notice, she attempted to pay the rent and late fees due for June 2019—which totaled $43—but Hauser returned the payment. Hauser included a letter, dated June 20, 2019, with the returned payment. The letter informed Rodgers that Palmer Gardens was rejecting the payment because "[a]fter a 3 day notice is issued your account must be paid in full for us to accept it. You have damages due from 4/26/2019 and 4/30/2019. Per your lease agreement ( also enclosed) those damages were to be paid within 30 days, or by 5/26/2019 and 5/30/2019."

{¶ 7} On cross-examination, Hauser agreed with defense counsel that "[she] refused rent because [she] wanted payment of the damages[.]" Her reasoning for this position was that "the damages become part of her rent, so [Rodgers] owed me more than * * *" the $43 she attempted to pay after Hauser posted the 3-day notice. Hauser based this belief on a provision in the lease stating that "[w]henever damage is caused by carelessness, misuse, or neglect on the part of the Tenant, his/her family or visitors, the Tenant agrees to pay * * * the cost of all repairs and do so within 30 days after receipt of the Landlord's demand for the repair charges * * *." Hauser's testimony made clear that Palmer Gardens wanted Rodgers to pay the charges that she had incurred for damage to the apartment in April 2019 to avoid eviction.

{¶ 8} Hauser also testified that Rodgers paid her rent late many times. During her testimony, Rodgers offered into evidence a ledger showing her rent-payment history from July 2018 to June 2019. Of the 12 months covered in the ledger, Rodgers paid only one month's rent on time. In the other 11 months, based on the late fees Palmer Gardens charged and the dates

3.

payments were posted to Rodgers's account, Rodgers paid her rent 3, 4, 4, 6, 6, 8, 14, 23, 23, and 54 days late, and then attempted to pay her rent 17 days late in June 2019 when Hauser returned her payment because she tendered it after Palmer Gardens had posted the 3-day notice.[1] Other than the June 2019 payment, Palmer Gardens routinely accepted Rodgers's late rent payments.

{¶ 9} Rodgers testified that she lived in the apartment with her three young children. Her rent payment was $25 a month, but she had no source of income. Although she tried to pay her rent for June 2019, Palmer Gardens would not accept it. She admitted that Palmer Gardens had charged her for damage to the apartment, but she disputed some of the charges. On cross-examination, Hauser acknowledged that Rodgers had disputed the damage charges before Palmer Gardens filed the eviction complaint. At the time of trial, Rodgers was willing and able to pay the rent she owed for June, July, and August 2019. Rodgers stated that she did not previously attempt to make rent payments in July or August of 2019—even though she continued to live in the apartment—because Hauser had refused to accept her rent in June.

{¶ 10} On September 16, 2019, the magistrate filed his decision granting judgment in favor of Palmer Gardens. The magistrate found that Rodgers was in default under the lease since July 28, 2019, that Palmer Gardens lawfully served Rodgers with a notice to vacate the premises, and that Rodgers "knew if tendering rent late notify[.]"

---

[1] The first entry on the ledger is a charge for $29 in late fees from June 2018. When rent was late, Rodgers's lease allowed Palmer Gardens to charge "a fee of $5 on the 6th day of the month. Thereafter, [Palmer Gardens] may collect $1 for each additional day the rent remains unpaid during the month it is due." The first payment on the ledger was recorded on July 25, 2018. From this we infer that Rodgers was also 54 days late with her rent for June 2018.

4.

{¶ 11} On September 30, 2019, Rodgers filed objections to the magistrate's decision. She argued that (1) Palmer Gardens improperly served the 10-day and 3-day notices; (2) Palmer Gardens waived its right to terminate her tenancy without first demanding strict compliance with the lease because the parties established a course of conduct of Rodgers paying rent late and Palmer Gardens accepting late rent payments; (3) Palmer Gardens claimed that it was evicting Rodgers for nonpayment of rent, but was really seeking payment of repair charges; and (4) evicting Rodgers was inequitable.

{¶ 12} Palmer Gardens responded that (1) it properly served the 10-day and 3-day notices pursuant to state and federal law, (2) the parties did not establish a course of conduct that constituted a waiver of Rodgers's obligation to timely pay rent, (3) it was terminating Rogers's tenancy for material noncompliance with the payment terms in the lease, and (4) it was not inequitable to evict Rodgers.

{¶ 13} On December 6, 2019, the trial court overruled all of Rodgers's objections and entered judgment in favor of Palmer Gardens.

{¶ 14} Rodgers now appeals, raising four assignment of errors:

I. THE TRIAL COURT ERRED IN FAILING TO PROPERLY CONSIDER THE COURSE OF CONDUCT ESTABLISHED BETWEEN THE PARTIES

II. THE TRIAL COURT ERRED IN FAILING TO CONSIDER THAT THE REFUSAL OF JUNE RENT WAS DUE TO A NON-PAYMENT OF A CHARGE FOR DAMAGES

III. THE TRIAL COURT ERRED IN GRANTING JUDGMENT

FOR AN EVICTION WHEN THE PROPER NOTICES WERE NOT

SERVED UPON MS. RODGERS

IV. THE TRIAL COURT ABUSED ITS DISCRETION IN

FAILING TO CONSIDER THE INEQUITY THAT WOULD BE

PLACED ON MS. RODGERS

## II. Law and Analysis

{¶ 15} In her first assignment of error, Rodgers argues that the parties established a course of conduct that consisted of Rodgers paying her rent late and Palmer Gardens accepting her late payments. In support of her argument, Rodgers cites to the rent ledger that she presented at trial, which shows the consistently late rent payments that she tendered and Palmer Gardens accepted from July 2018 to May 2019. Palmer Gardens responds that although Rodgers paid rent late multiple times, it did not accept rental payments "substantially later" than the due dates, as required to waive its right to timely rent payments.

{¶ 16} In her second assignment of error, Rodgers argues that, although Palmer Gardens claimed that it was seeking to evict her for nonpayment of rent, its actual grounds for eviction was nonpayment of charges for repairs to her apartment. Because of the parties' course of conduct, Rodgers argues, Palmer Gardens cannot refuse her late June 2019 rent, despite the fact that she did not pay the full balance due on her account. Palmer Gardens contends that it sought to terminate Rodgers's tenancy on the basis of material noncompliance with the payment terms of the lease—not simply because she refused to pay the repair charges—and that Rodgers did not attempt to pay rent until after it served her with the 3-day notice.

6.

{¶ 17} In her third assignment of error, Rodgers argues that neither the 10-day notice nor 3-day notice complied with the lease or HUD regulations. In support of her claim, Rodgers argues that the 10-day notice does not contain the specificity required by federal law because it does not list the amount of rent she owed or the date Palmer Gardens calculated the amount she owed. Regarding the 3-day notice, Rodgers argues that it cannot substitute for the 10-day notice required by the HUD regulations because it does not contain the correct day she must leave the property and fails to state the grounds for eviction with enough detail for her to prepare a defense by failing to specify the amount of rent owed and the date of computation. Rodgers further argues that admission of the 10-day notice was improper because it was not attached or referred to in the complaint.

{¶ 18} Palmer Gardens responds that both the 10-day notice and 3-day notice complied with state and federal law, the magistrate properly admitted the 10-day notice at trial, and the trial court properly found by a preponderance of the evidence that Rodgers received the 10-day notice. In support, Palmer Gardens argues that neither state nor federal law requires the specificity that Rodgers suggests and, although it was not attached to the complaint, the magistrate's admission of the 10-day notice was not an abuse of discretion. Palmer Gardens further argues that Rodgers was not prejudiced by any alleged inadequacy of the notices.

{¶ 19} Finally, in her fourth assignment of error, Rodgers argues that it would be inequitable to evict her because she and her children will be homeless if her tenancy is terminated. Palmer Gardens responds that equity is better served by allowing it to evict Rodgers and lease the unit to "a tenant better able to abide by the terms established by HUD and outlined in [Palmer Gardens's] standard lease agreement * * *."

7.

## A. Standard of review

{¶ 20} This case involves an appeal of the trial court's judgment overruling objections to the magistrate's decision and adopting the decision in full. When a trial court considers objections to a magistrate's decision, the court must "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). On appeal, however, we review the trial court's ruling on objections to a magistrate's decision only for an abuse of discretion. *Baker v. R/A Cab Co.*, 6th Dist. Lucas No. L-19-1031, 2019-Ohio-4375, ¶ 10. Abuse of discretion means that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610, 665 N.E.2d 200 (1996).

## B. The trial court properly admitted the 10-day notice into evidence.

{¶ 21} Preliminarily, we address Rodgers's argument (raised under her third assignment of error) that the trial court could not consider the 10-day notice because it was not attached to the complaint. A trial court has broad discretion to admit or exclude evidence, and we will not reverse its decision absent an abuse of discretion. *State v. Whites Landing Fisheries, LLC*, 2017-Ohio-7537, 96 N.E.3d 1236, ¶ 42 (6th Dist.).

{¶ 22} Rodgers's only argument against the admissibility of the 10-day notice is that there is "inadequate proof" that Rodgers was served with the 10-day notice because it was not attached to the complaint and because Rodgers testified that she only received the 3-day notice. However, Hauser testified that she posted the 10-day notice on June 6, 2019, and the court was free to believe Hauser's testimony over Rodgers's testimony.

8.

For that reason, we do not find that the trial court abused its discretion by considering the 10-day notice.

### C. The trial court erred in granting Palmer Gardens a writ of restitution based on grounds not specified in the notice of termination.

{¶ 23} Rodgers's second assignment of error is dispositive of the case. In it, she argues that Palmer Gardens evicted her for failing to pay for alleged damage to her apartment, even though Palmer Gardens stated in the 10-day and 3-day notices that her lease was being terminated for "NON PAYMENT [sic] OF RENT." Palmer Gardens responds that it sought to terminate her tenancy based on material noncompliance with the terms of her lease—not just her failure to pay for the repair charges—which is permissible under the terms of the lease.

{¶ 24} A forcible entry and detainer action under R.C. 1923.02 is an action upon a contract through which a landlord seeks to regain possession of its premises from a tenant. *Tillimon v. Jankowski*, 6th Dist. Lucas No. L-91-262, 1992 WL 114606, *2 (May 29, 1992); *Fodor v. First Natl. Supermarkets, Inc.*, 63 Ohio St.3d 489, 491, 589 N.E.2d 17 (1992). Like any other contract, a written lease must be construed to carry out the intent of the parties, which we presume is reflected in the plain language of the lease. *Tillimon* at *2; *Beverage Holdings, LLC v. 5701 Lombardo, LLC*, 159 Ohio St.3d 194, 2019-Ohio-4716, 150 N.E.3d 28, ¶ 13. When the language in the lease is plain and unambiguous, we enforce the terms as written, and we give the words used their ordinary meanings. *Beverage Holdings* at ¶ 13.

{¶ 25} As a landlord accepting HUD subsidies, Palmer Gardens was required to comply with federal regulations in addition to state landlord-tenant laws before terminating Rodgers's lease. *Schroeder Co. v. Coates*, 172 Ohio App.3d 254, 2007-Ohio-2956, 874 N.E.2d 832, ¶ 34 (6th Dist.). Relevant here, 24 C.F.R. 247.3(a)(1) limits a landlord to terminating a tenancy for

9.

"[m]aterial noncompliance with the rental agreement," which is defined as, among other things, "[n]on-payment of rent or any other financial obligation due under the rental agreement (including any portion thereof) beyond any grace period permitted under State law * * *." 24 C.F.R. 247.3(c)(4).[2] The landlord must provide the tenant with a written notice of its intent to terminate the lease that includes the date the tenancy will terminate, states the landlord's reasons for termination with enough specificity to enable the tenant to prepare a defense, and advises the tenant that if she remains in the unit after the termination date, the landlord can enforce the termination only by bringing a judicial action at which the tenant may present a defense. 24 C.F.R. 247.4(a). When the landlord files a judicial eviction action, the only permissible bases for the eviction are the grounds for termination that the landlord included in the written termination notice. 24 C.F.R. 247.6(b).

{¶ 26} Palmer Gardens incorporated these requirements into its lease with Rodgers. Under section 23(b) of Rodgers's lease, "[a]ny termination of this Agreement by [Palmer

---

[2] There are other regulations—with slightly different language and requirements—that govern different HUD subsidy programs. *See, e.g.*, 24 C.F.R. 880.607(b)(3) (containing the same definitions of "material noncompliance" as 24 C.F.R. 247.3(c) except for the term regarding "[n]on-payment of rent or any other financial obligation due under the rental agreement (including any portion thereof) beyond any grace period permitted under State law * * *" in 24 C.F.R. 247.3(c)(4)). The record does not contain any information about the specific subsidy program in which Rodgers was enrolled. However, the first page of the lease Rodgers signed says that it is a "MODEL LEASE FOR SUBSIDIZED PROGRAMS," the bottom of each page of the lease notes that it is "form HUD-90105a," and the language in the lease mirrors language in 24 C.F.R. Part 247. We infer from this that Palmer Gardens chose to use forms provided by HUD for subsidy programs that are controlled by 24 C.F.R. Part 247, and, by entering into such a lease with Rodgers, we presume that Rodgers was enrolled in a subsidy program controlled by 24 C.F.R. Part 247. Accordingly, we will use 24 C.F.R. Part 247 to guide our analysis.

10.

Gardens] must be carried out in accordance with HUD regulations, State and local law, and the terms of this Agreement." Section 23(c) of the lease lists various justifications for Palmer Gardens terminating the lease, including Rodgers's "material noncompliance" with the terms of the lease. Among other things, section 23(d) defines "material noncompliance" as "[n]on-payment of rent or any other financial obligation due under the lease beyond any grace period permitted under State law." Before terminating Rodgers's tenancy, section 23(e) of the lease required Palmer Gardens to give Rodgers written notice that included "the grounds for the proposed termination." Specifically, the lease required that

> [a]ll termination notices must:
>
> • specify the date this Agreement will be terminated;
>
> • state the grounds for termination with enough detail for the Tenant to prepare a defense; [and]
>
> * * *
>
> • advise the Tenant of his/her right to defend the action in court.

Section 23(f) also obligated Palmer Gardens to "rely only upon those grounds cited in the termination notice required by * * *" section 23(e) if it initiated an eviction action against Rodgers.

{¶ 27} Here, Palmer Gardens posted a 10-day notice, which stated that it intended to terminate Rodgers's tenancy due to "NON PAYMENT [sic] OF RENT." Hauser testified that Rodgers owed Palmer Gardens money for damages to the apartment and "some" late fees at the

time she posted the 10-day and 3-day notices.[3] From the trial testimony and the ledger that Rodgers offered into evidence, it appears that the only actual *rent* that Rodgers owed as of June 6, 2019 (the date of the 10-day notice) was rent for the month of June 2019; the remaining charges on her account were for damages to the apartment in April 2019 and a small amount of unpaid late fees from May 2019. After posting the 3-day notice on June 17, 2019, Palmer Gardens added a cleaning fee and late fees for June 2019 to Rodgers's account.

{¶ 28} Palmer Gardens's attorney and Hauser both commented at trial that the fees Rodgers owed for damage to the apartment "become" part of her rent, so Palmer Gardens was justified in evicting Rodgers based on her failure to pay the repair charges. Hauser based this belief on section 11 of the lease, which addresses damage to the property: "[w]henever damage is caused by carelessness, misuse, or neglect on the part of the Tenant, his/her family or visitors, the Tenant agrees to pay * * * the cost of all repairs and do so within 30 days after receipt of the Landlord's demand for the repair charges * * *." However, nothing in that section indicates that the costs of any repairs to the leased property somehow "become" rent under any circumstance.

{¶ 29} Indeed, there is nothing in the lease that supports the notion that unpaid damage charges "become" rent. To the contrary, section 3 of the lease specifies the amount of rent that Rodgers must pay every month, and section 4 of the lease states that the amount of rent "may be changed during the term of this Agreement * * *" only if certain circumstances occur—none of which are applicable here. Although section 11—the section related to damages—addresses rent to some extent, it merely requires the tenant to continue paying rent for any period that the

---

[3] Section 5 of the lease specifically states that Palmer Gardens "may not terminate this Agreement for failure to pay late charges * * *."

12.

apartment is damaged, even if the unit is not habitable, and informs the tenant that she would have to pay the "HUD-approved market rent" (rather than the unsubsidized portion the tenant generally pays) for the apartment while the apartment is uninhabitable. Simply put, the lease does not provide that charges for damage to the property would become part of the tenant's monthly rent obligation.

{¶ 30} In its brief, Palmer Gardens argues that it "sought to terminate [Rodgers's] tenancy on the basis of her material noncompliance with terms of the lease regarding the amount and manner rent was to be paid"—arguing that Rodgers's attempt to pay rent in June 2019 occurred after both the 10-day and 3-day notices were posted, and that Hauser's refusal of rent did not occur until after the notices were posted and any grace periods expired. But, both notices state that Palmer Gardens was terminating Rodgers's tenancy due to "NON PAYMENT [sic] OF RENT"—i.e., Rodgers had not paid the rent that was due under the lease[4]—not "material noncompliance with terms of the lease regarding the amount and manner rent was to be paid."

{¶ 31} Moreover, given that (1) Palmer Gardens told Rodgers that her June 2019 rent payment was rejected because "your account must be paid in full for us to accept it," (2) Rodgers's account consisted primarily of non-rent charges, (3) Hauser confirmed at trial that "[she] refused rent because [she] wanted payment of the damages," and (4) Hauser testified that she believed that non-rent charges "become" rent under the lease, we cannot find that Palmer Gardens sought to evict Rodgers for "NON PAYMENT [sic] OF RENT" as stated in the termination notices. Rather, Palmer Gardens sought to evict Rodgers because her account was

---

[4] We express no opinion as to whether Palmer Gardens stated the grounds for termination with enough detail for Rodgers to prepare a defense even though the notice failed to specify the amount of rent owed and the date of computation.

13.

not "paid in full." Any suggestion to the contrary is unreasonable, arbitrary, and unconscionable given the record that was before the trial court.

{¶ 32} Accordingly, because Palmer Gardens sought to evict Rodgers for a reason *other than* "NON PAYMENT [sic] OF RENT"—in direct contravention of both the terms of the lease and the HUD regulations governing Rodgers's tenancy—the trial court abused its discretion in overruling Rodgers's objections to the magistrate's decision and granting Palmer Gardens a writ of possession. Accordingly, we find that Rodgers's second assignment of error is well-taken.

## D. Rodgers's remaining assignments of error are moot.

{¶ 33} Given our disposition of Rodgers's second assignment of error, we conclude that her remaining assignments of error are moot and are not well-taken.

## III. Conclusion

{¶ 34} Because Palmer Gardens failed to comply with the terms of the lease and the HUD regulations governing Rodgers's tenancy by seeking to evict Rodgers for reasons that were not specified in the applicable 10-day and 3-day notices, the December 6, 2019 judgment of the Toledo Municipal Court is reversed and vacated. Palmer Gardens is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed
and vacated.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

14.

Thomas J. Osowik, J.          

_____
                                         JUDGE

Christine E. Mayle, J.          

_____
                                         JUDGE

Gene A. Zmuda, P.J.          
CONCUR.

_____
                                         JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.