[Cite as *Cleveland v. 8009 Lake, L.L.C.*, 2025-Ohio-2775.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

CITY OF CLEVELAND,                    :

    Plaintiff-Appellee,          :

                                    No. 114576

v.                                    :

8009 LAKE LLC, ET AL.,                :

    Defendants-Appellants.       :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 7, 2025

---

Civil Appeal from the Cleveland Municipal Court
Housing Division
Case No. 2020-CVH-004713

---

### *Appearances:*

Douglass & Associates Co., LPA, David M. Douglass, Sean F. Berney, Michael E. Reardon, Heidi A. Armstrong, and Zachariah S. Germaniuk, *for appellee.*

DannLaw, Marc E. Dann, Whitney Kaster, and Andrew M. Engel, *for appellant.*

SEAN C. GALLAGHER, J.:

{¶ 1} Bobby J. Tucker appeals the decision of the Cleveland Municipal Court, Housing Division, granting summary judgment in favor the City of Cleveland and against him in the amount of $167,408.40. For the following reasons, we affirm.

{¶ 2} Tucker owned a multi-unit apartment building located at 8009-8013 Lake Avenue in Cleveland, Ohio. In 2012, the property was severely damaged by fire. Tucker abandoned the property, in effect leaving the taxpayers to fund any remediation. The city deemed it a public nuisance and issued a "Notice of Violation of Building and Housing Ordinances" condemning the structure under Cleveland Cod.Ord. ("C.C.O.") 3103.09(e) (eff. Nov. 16, 2011).[1] Under C.C.O. 3103.09 the city is authorized to "declare that a nuisance structure" may be "abated by immediate repair and rehabilitation . . . or by demolition." If the owner of the condemned property is not found through a reasonable and diligent search, "then the notice and order shall be sent by certified mail to his tax mailing address . . . and a copy of the notice shall be posted in a conspicuous place on the premises to which it relates." C.C.O 3103.09(e)(2). The mailing and posting constitutes legal service of the notice. Additionally, C.C.O. 3103.09(k) provides that all expenses or costs incurred by the city relating to the demolition of a condemned structure shall be paid by the owner of the building, including "[a]ny and all owners of a building . . . who appear in the

---

[1] All references to C.C.O. 3103.09 are intended to reflect the version in effect at the time the city condemned the structure, unless otherwise noted.

chain of title from the time of receipt of a notice of condemnation until demolition of the building."

{¶ 3} The city attempted to serve the notice of condemnation to Tucker by certified mail at three addresses: the property's address, returned as "not deliverable as addressed"; Tucker's tax mailing address in Ashtabula, returned as "refused"; and a residential address in Florida. The certified mail sent to Tucker at the Florida address was received by "James." The surname is indecipherable. The city also included affidavits from the director of building and housing for the city, attached to its motion for summary judgment, stating that the city posted the notice of condemnation at the property and authenticating the documents attached to the complaint, including photographs of the posted notice.

{¶ 4} Approximately two years later, Tucker lost the property in a tax-foreclosure proceeding. *See Woods Cove II, L.L.C. v. Tucker,* Cuyahoga C.P. No. CV-13-805695. Ownership of the property was transferred to third parties. After issuing the notice of condemnation, the city incurred various costs associated with nuisance-abatement services, and in 2018, the city financed the demolition of the apartment building. In 2020, the city filed a complaint against six defendants, including Tucker, to recoup the costs associated with the abatement and the demolition of the structure on the property. The other defendants are in the chain of title after the condemnation notice was issued but are not part of this appeal.

{¶ 5} The housing court granted the city summary judgment against Tucker in the amount of $167,408.40 based on the evidence attached to its complaint and

motion, which demonstrated proper service and the amount expended in abating and demolishing the building.

{¶ 6} In this appeal, Tucker presents two assignments of error claiming (1) that the trial court erred in granting the city's motion to dismiss; or (2) erred in overruling his motion to dismiss. Doubling down on the misstatement of the procedural posture in his assignments of error, Tucker states the applicable standard of review is established by Civ.R. 12(B)(6), and the question he presents in this appeal is whether the city failed to state a claim upon which relief could be granted.

{¶ 7} We cannot accept Tucker's framing of the issues. The housing court's decision was based on Civ.R. 56, and the question in this appeal is whether the city demonstrated with undisputed evidence its entitlement to the judgment entered against Tucker.

{¶ 8} Appellate courts review the granting or denying of a motion for summary judgment de novo. *Smathers v. Glass*, 2022-Ohio-4595, ¶ 30, citing *A.J.R. v. Lute*, 2020-Ohio-5168, ¶ 15. The de novo standard recognizes an appellate court's independent review of the evidence or legal issues, meaning a review without deference to the trial court's conclusions. *Id.*, citing *Wilmington Sav. Fund Soc., FSB v. Salahuddin*, 2020-Ohio-6934, ¶ 20 (10th Dist.). Notwithstanding, appellate courts do not conduct an independent review of all potential issues implicated by the dispute. Courts are limited to the arguments actually presented by the parties. *See Snyder v. Old World Classics, L.L.C.*, 2025-Ohio-1875, ¶ 4 (reiterating Ohio's

adherence to the party-presentation principle, in which courts should refrain from deciding cases on issues not raised by the parties).

{¶ 9} The crux of Tucker's argument focuses on his claim that the city failed to perfect service of the notice of condemnation back in 2012 by certified or regular mail. Tucker claims that the city was required to adhere to the formalities of service established by C.C.O. 3103.09 and also C.C.O. 367.04, the latter of which establishes differing service requirements for housing-code violations in general. Relying on a self-serving affidavit, he claims to have never received the notice, and in this appeal uses that statement as proof that the mailings failed. Without demonstrating proper service through his actually receiving the notice through the mailings, according to Tucker, the city's cause of action to impose liability against him should have been dismissed. His argument, however, misconstrues the service requirements established in C.C.O. 3103.09(e).

{¶ 10} In this type of case, in which the city seeks recoupment for the demolition costs of a condemned structure, all that is required under C.C.O. 3103.09(e)(1) is that the notice of condemnation be sent by certified mail to the owner of the property at their tax address (after reasonable diligence in attempting to locate the owner) and separately posted at the condemned property. *Cleveland v. Lewis*, 2017-Ohio-7319, ¶ 23 (8th Dist.). The city presented undisputed evidence that this occurred with several affidavits presented with the motion for summary judgment establishing that the notice of condemnation was posted at the property and authenticating the photographic proof attached to the complaint.

**{¶ 11}** C.C.O. 3103.09 "does not require the city to do more." *Id.* In *Lewis,* the property owner, who was found liable for the demolition costs and expenses, appealed the decision imposing liability claiming that the city had not served the notice of condemnation in violation of their due process rights because the certified mailing was returned "unclaimed."[2] The panel concluded that the ordinance "is silent as to what the city should do if the certified mail [under C.C.O. 3103.09(e)(2)] comes back 'unclaimed.'" *Id.* As a result, it was concluded that legal service is complete once the notice of condemnation is merely sent by certified mail to the tax address of the owner and then posted at the property. *Id.* at ¶ 23; *see also Cleveland v. Whitmore*, 2020-Ohio-3670, ¶ 32 (8th Dist.). The mailing does not need to be actually received by the addressee. *Id.*

**{¶ 12}** For the purposes of this appeal, "unclaimed" and "refused" are two sides of the same coin. *See In re Thompkins*, 2007-Ohio-5238, ¶ 22 (unclaimed means "the '[a]ddressee abandoned or failed to call for mail'"), citing The United States Postal Service, Domestic Mail Manual, Section 507, Exhibit 1.4.1, available at http://pe.usps.gov/text/dmm300/507.htm. In both situations, the certified mail is not considered to have been received.

**{¶ 13}** In this case, the notice issued on June 22, 2012, was sent by certified mail to Tucker at his tax address and also posted at the condemned property three

---

[2] Although *Lewis* addressed an earlier version of C.C.O. 3103.09, the service language was identical to the 2011 version at issue in this case.

days after issuance according to the city's evidence. There is no dispute that the city complied with the specific service requirements under C.C.O. 3103.09(e)(2).

{¶ 14} With respect to the question of proper service, Tucker claims in the alternative that the city must also comply with C.C.O. 367.04, which establishes the general methods of serving a housing-code violation. C.C.O. 367.04, however, gives way to the more specific service requirements of C.C.O 3103.09(e)(2), which pertain to notices of condemnation, the type of violation at issue in this case. *See State v. Bollar*, 2022-Ohio-4370, ¶ 21, citing *RadLAX Gateway Hotel, L.L.C. v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (a specific provision is construed as an exception to a more general one). The service requirements under C.C.O. 3103.09 are specific to condemnation proceedings and, therefore, are an exception to the general rules. C.C.O. 367.04 has not been shown to be applicable to the condemnation order at issue in this case.

{¶ 15} Tucker finally claims that he did not actually receive the notice of the condemnation because none of the mailings were completed and, as a result, he should not be considered an owner in the chain of custody under C.C.O. 3103.09(k). He provides no analysis, discussion, or authority to support that argument.

{¶ 16} Instead, Tucker presents a cursory argument that the word "receipt" under C.C.O. 3103.09(k) means the same thing as the word "service" under the Ohio Civil Rules — claiming that because service of the complaint under Civ.R. 4 triggers the requirement to file an answer, and from that it necessarily follows that he cannot be held liable because he was not served with a copy of the notice through the mail.

According to Tucker, the city was required to complete service through the mail before he can be considered an owner of the property. It suffices for this argument that the word "receipt" and the word "service" are indeed distinct terms of art. Tucker has not established any correlation between Civ.R. 4 and C.C.O. 3103.09.

{¶ 17} The question to be asked in this case is whether Tucker was an owner of the property "from the time of receipt of a notice of condemnation until demolition of the building" under C.C.O. 3103.09(k), based on the posting of the notice of condemnation at his property. *Orrenmaa v. CTI Audio, Inc.*, 2008-Ohio-4299, ¶ 106 (11th Dist.) (in part presuming "receipt" of the building-code violation after the notice was posted on the property); s*ee also Gardens v. Rodgers*, 2020-Ohio-5040, ¶ 22 (6th Dist.) (landlord's testimony regarding the posting of the ten-day notice to comply or vacate a premises was an issue of fact in light of the parties' factual disagreement as to whether the notice was actually posted).

{¶ 18} Tucker's self-serving statement in his affidavit is limited: "I never received the June 22, 2012 Notice of Violation of Building and Housing Ordinances with respect to the property at 8009 Lake Ave. Cleveland Ohio 44107 and that is attached to the City's motion for summary judgment." Throughout the appellate briefing, Tucker's focus is on the failure of the certified mailings to be completed and the city's non-use of regular mail service based on his self-serving statement. That argument fails to address the legal impact of the notice posted at his condemned property during the time that he was the lawful owner of it for the purposes of C.C.O. 3103.09(k). We are not responsible for, and should refrain from, filling his silence

with our own analysis and authority. *State v. Quarterman*, 2014-Ohio-4034, ¶ 19 (concluding that appellate courts "are not obligated to search the record or formulate legal arguments on behalf of the parties"), citing *State v. Bodyke*, 2010-Ohio-2424, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part); *see also Snyder*, 2025-Ohio-1875, at ¶ 4 ("Under the principle of party presentation, 'we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'"), citing *Greenlaw v. United States*, 554 U.S. 237, 243 (2008); App.R. 16(A)(7).

{¶ 19} Based on the foregoing discussion, there is no merit to either of Tucker's assigned errors based on the arguments presented. The decision of the housing court granting judgment in favor of the city is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court, Housing Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
EILEEN A. GALLAGHER, A.J., DISSENTS (WITH SEPARATE OPINION)

EILEEN A. GALLAGHER, A.J., DISSENTING:

{¶ 20} I respectfully dissent from the majority's opinion affirming the municipal court's granting summary judgment to the City of Cleveland ("Cleveland") in this debt collection action. Rather, I would follow the unambiguous law Cleveland set forth in C.C.O. 3103.09(k), which governs recouping costs of nuisance abatement services, including demolition of a property. C.C.O. 3103.09(k) states, in part, as follows:

> (1) Any and all expenses or costs . . . incurred under this section relating to the demolition . . . of a building . . . shall be paid by the owner of such building . . . .

> (2) Any and all owners of a building . . . who appear in the chain of title from the time of receipt of a notice of condemnation until demolition of the building . . . shall be jointly and severally responsible for all costs and expenses incurred relating to the demolition . . . .

{¶ 21} In this case, Tucker's arguments on appeal are threefold: first, Cleveland's summary judgment evidence was inadmissible; second, Cleveland did not comply with the notice provisions in C.C.O. 3103.09(e) and third, Tucker never received the notice as required under C.C.O. 3103.09(k). The majority opinion does not appear to address Tucker's first argument. As to the second argument, the majority opinion concludes that Cleveland complied with the notice provisions in C.C.O. 3103.09(e). I agree with that conclusion, and per the ordinance, the result of compliance with Section (e) is that Cleveland was authorized to condemn and demolish the apartment building at issue. Per the plain terms of C.C.O. 3103.09,

compliance with Section (e) does not automatically give Cleveland a green light to recoup costs under Section (k).

{¶ 22} In any event, demolition of the building is not at issue in this case. Tucker's third argument is the controlling issue here, and it falls squarely under C.C.O. 3103.09(k), which authorizes Cleveland to recoup demolition and abatement costs from owners "who appear in the chain of title from the time of receipt of a notice of condemnation until demolition of the building . . . ." As Tucker argued in his appellate brief, "[t]he use of the word 'receipt' is important." The crux of this argument is Tucker's contention "that the notice provisions, as written, require actual receipt of the Notice of Violation before such liability [to recoup demolition costs] can be imposed." I agree with Tucker's argument.

{¶ 23} It is well established that courts must construe the language of a statute to determine the intent of the government when drafting it. "The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction." *United States v. Wiltberger,* 18 U.S. 76, 95-96 (1820). When the meaning of a statute is clear and unambiguous courts "have no cause to apply the rules of statutory construction." *State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 2017-Ohio-8714, ¶ 15. "An unambiguous statute must be applied in a manner consistent with the plain meaning of the statutory language." *State v. Lowe*, 2007-Ohio-606, ¶ 9.

{¶ 24} A review of C.C.O. 3103.09 shows that, when Cleveland drafted the ordinance, it set forth different notice standards for abating a nuisance, including

demolition of a structure, than it did for collecting a demolition debt. Section (e) requires Cleveland to "forward by certified mail to the owner" of the property notice of the nuisance prior to abating the nuisance. Section (k), on the other hand, requires property owners "who appear in the chain of title from the time of receipt of a notice of condemnation until demolition of the building" to pay for the demolition costs. Section (k) states nothing about Cleveland serving, issuing or sending notice to property owners; rather, it focuses on the property owners' receipt of the notice. From the express language of the ordinance, it is plain and clear that Cleveland must send notice to property owners before it demolishes a property, but the property owner must actually receive the notice before Cleveland may recoup demolition costs.

{¶ 25} Cleveland could have drafted C.C.O. 3103.09(k) to read that sending notice under Section (e) suffices to hold owners liable for demolition costs. But it did not. Instead, it drafted an entirely different standard to hold owners liable for demolition costs. In my opinion, we must hold Cleveland accountable under the ordinance it drafted, and we should not read words into the ordinance which are not there nor should we ignore words which are. As Tucker argued in his reply brief in this appeal, in drafting C.C.O. 3103.09(k), Cleveland "decided that before it should impose liability for demolition costs on a person, that person should actually receive notice of the condemnation order. These are the policy choices the City itself put in place. It should not now be permitted to argue that it does not need to adhere to these choices."

{¶ 26} The majority cites two opinions to support the notion that Cleveland complied with C.C.O. 3103.09(k) "based on the posting of the notice of condemnation at his property": *Orrenmaa v. CTI Audio, Inc.*, 2008-Ohio-4299 (11th Dist.), and *Gardens v. Rodgers*, 2020-Ohio-5040 (6th Dist.). A review of these two cases shows that neither is based on C.C.O. 3103.09 at all, let alone Section (k). Additionally, neither case stands for the legal proposition that posting a notice satisfies a standard of law requiring receipt of the notice. Therefore, *Orrenmaa* and *Gardens* do not control the outcome of this case.

{¶ 27} Indeed, Tucker's argument that the express language of Section (k) requires "receipt of a notice of condemnation" appears to be novel because there is not a case in Ohio directly on point. This includes this court's opinion in *Cleveland v. Lewis*, 2017-Ohio-7319 (8th Dist.), cited by the majority, which is distinguishable from the case at hand. In *Lewis*, this court stated that "[t]he main question presented in this appeal is whether the city provided proper notice pursuant to the city's housing and building code to appellant before demolishing the condemned structure." *Id.* at ¶ 7. The *Lewis* Court did not analyze C.C.O. 3103.09(k). Therefore, *Lewis* does not control the outcome of this case.

{¶ 28} The majority also cites *Cleveland v. Whitmore*, 2020-Ohio-3670, ¶ 32 (8th Dist.), for the proposition that the "mailing does not need to be actually received by the addressee." The parties in *Whitmore* did not raise the issue of "receipt" of notice under C.C.O. 3103.09(k), and per the principles of the party-presentation doctrine, this court did not include the "receipt" issue in its analysis.

In fact, Whitmore's argument concerning Section (k) is as follows: "In his second assignment of error, appellant argues that the trial court erred in holding him liable for the costs of the demolition when he was not the owner of the property at the time of the demolition." *Id.* at ¶ 22. That is not an argument Tucker made in this case. Therefore, *Whitmore* does not control the outcome of this case either.

{¶ 29} Upon review of the record in this case, I find no evidence that Tucker received the notice. Indeed, the only evidence in the record regarding this issue is Tucker's undisputed assertion that he did not receive the notice. This assertion came in the form of an affidavit attached to Tucker's brief in opposition to Cleveland's summary judgment motion and Tucker's summary judgment motion. This assertion is enough to shift the burden to Cleveland to show receipt of the notice. *See, e.g., Deaton v. Booker*, 2004-Ohio-4630, ¶ 8 (8th Dist.) ("A party's unchallenged affidavit is sufficient to overcome the presumption of service . . . . This sworn statement places the burden on the serving party to make a further evidentiary showing that the party being served had received the entries.").

{¶ 30} Tellingly, Cleveland did not file a responsive pleading to Tucker's brief in opposition and cross-summary judgment motion. In other words, Tucker's assertion that he did not receive the notice was unchallenged.

{¶ 31} Applying the plain language of C.C.O. 3103.09(k) to the undisputed facts of this case, I would find that Cleveland failed to meet its initial burden of demonstrating that it is entitled to summary judgment. Therefore, the court erred when it granted Cleveland's summary-judgment motion. Furthermore, because

there are no factual issues for trial, and because the only evidence in the record is that Tucker did not receive the notice, reasonable minds can reach only one conclusion and that conclusion is adverse to Cleveland.  Therefore, Tucker is entitled to summary judgment on Cleveland's claims to collect demolition costs.

{¶ 32} I would sustain both of Tucker's assignments of error and reverse the trial court's judgment.